W. A. BECKER and Alvin Roberts,
Plaintiffs-Appellees,

v.

CELEBRATION, INC.,
Defendant-Appellant.

No. 75-2290.

United States Court of Appeals,
Sixth Circuit.

Argued June 9, 1976.

Decided Aug. 26, 1976.

Jack M. Irion, James L. Bomar, Jr., Bomar, Shofner, Bomar & Irion, Shelbyville, Tenn., for defendant-appellant.

W. Nowlin Taylor, Michael E. Clift, Shelbyville, Tenn., for plaintiffs-appellees.

Before PHILLIPS, Chief Judge, and WEICK and ENGEL, Circuit Judges.

WEICK, Circuit Judge.

The Thirty-Fifth Annual Walking Horse National Celebration Show was held in Shelbyville, Tennessee from August 23rd to

September 1st, 1973. Entered in that competition among other horses, was Replica Rebel T, a registered Tennessee walking horse owned by T. R. Becker. The horse was trained by Alvin Roberts.

Becker and Roberts, who were residents of Mississippi, sued Celebration, Inc., a Tennessee non-profit corporation, the Promoter of the horse show; the Directors of Celebration, Inc., in their individual capacities; Dr. Nathan Thomas, the veterinarian; Sam Gibbons, the Manager of the Show; and Emmet Guy, the Public Address Announcer. In their complaint, Becker and Roberts alleged that defendants negligently breached their contract with plaintiffs to show the horse, resulting in damage to their business reputation and diminished dollar value of Replica Rebel T. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332(a). The substantive law of Tennessee governs.

The National Celebration in Shelbyville is in reality, a beauty contest for walking horses in which the horse is judged on its general appearance, gait and conformation. Walking horses "walk" in a particularly pleasing high-stepping manner. In order to encourage their horses to walk in this manner, some trainers in the past had developed a technique of "soring" the animal's feet—i. e., by application of chemical or mechanical means causing the front feet of the horse to be sensitive so that the horse would lift its feet higher while performing (apparently because of pain). In response to the protests of animal lovers over this practice, Congress passed the Horse Protection Act of 1970, under which the Department of Agriculture promulgated regulations in 1972. 15 U.S.C. § 1821 et seq.; 9 C.F.R. 12.1 et seq.

Pursuant to these regulations, the National Celebration began an inspection program to ensure that horses to be shown in the competition were sound. Before a class of horses was taken to the show ring, a veterinarian inspected each horse. The inspection station had a list of the numbers of all horses entered. When a horse was inspected, its number was circled. If it failed to pass, an "X" was drawn through the circle. The circled numbers were then transferred to a list given to the Ringmaster.

Replica Rebel T was assigned Number 1540 and passed the inspection by the veterinarian. However, a clerical error which was wholly unintentional, resulted in an "X" being drawn through 1540's circle on the inspection record, and the notation "SBP" (sensitive both pasterns) placed alongside. Unaware of this error, Roberts rode the horse into the ring and it was judged along with the other eleven horses in the class. Eventually, while the judging was in progress, the Ringmaster noticed that twelve horses were in the ring, but that only eleven horses were included on his list. The inspection list showed that 1540 was ineligible. The Ringmaster therefore ordered Replica Rebel T withdrawn from the ring. The following announcement was made over the public address system:

> 1540 will be excused. I am requested to announce that this number failed to qualify at the Celebration Veterinarian Inspection Station.

The announcement occurred only after the judging on gait had been completed and the horses were being lined up to be judged for conformation.

Roberts rode the horse to the official's station and insisted that his horse had passed the inspection, but he was told to leave the ring. The official at that time had no information other than the eligibility list. Roberts then rode to the veterinarian's station and talked with Dr. Thomas who remembered passing the horse. This information was then conveyed to the official booth. Roberts and Replica Rebel T immediately returned to the ring as the following announcement was made over the public address system:

> I am requested to advise that the veterinarian station advises that 1540 is eligible.

The horse's return to the ring received a roar of applause from the 13,000 spectators in attendance. Replica was then judged for

conformation, and the horse on completing the judging, ranked eighth in the contest.

In the pretrial Order, the District Judge decided that this action was one for tortious breach of contract and the case was tried on that theory. At the close of the plaintiffs' evidence, the District Court directed a verdict in favor of the individual defendants, as no liability had attached to them. However, as to Celebration, the issue as to its liability to Becker and Roberts was submitted to the jury.[1] The jury found in favor of the plaintiffs and against Celebration and awarded $5,000 in damages to Becker and $10,000 to Roberts. The Court later ordered a remittitur in Becker's case of all but $10 on the ground that Becker had neglected to prove he sustained any injury. Becker does not challenge the remittitur in this appeal. The Court entered judgment in favor of Becker for $10 and in favor of Roberts for $10,000.

Celebration has appealed to this Court asserting error in the denial of its motion for a directed verdict and for judgment n. o. v.

Before reaching the question of law whether Tennessee permits recovery for tortious breach of contract we should determine the contractual provisions and whether they were breached by Celebration.

■ The only "contract" proved in this case was an agreement by Celebration, in consideration of the thirty dollar entry fee, to show the horse and have it judged. All the evidence is conclusive that Replica Rebel T was in fact shown and fairly judged. Both judges who testified, stated that they had finished ranking all of the horses with respect to gait when Replica Rebel T was excused from the ring.[2] Although the horse was out of the ring from four to seven minutes during the judging with regard to conformation, both judges testified that upon the return of the horse to the ring, they judged it as to conformance and

that conformation was used only to break ties in ranking as to gait, and further, that no changes in the rankings occurred during the conformation judging. Both judges stated emphatically that Replica Rebel T's short absence from the ring had no effect on their judging or on the horse's ranking.

The contractual obligation of Celebration, Inc. to show the horse and to permit the horse to be judged was completely fulfilled. The fact is that although Replica Rebel T was absent from the ring, that absence from the ring did not interfere in any respect with its judging, and this was not even a de minimis deviation from the letter of the "contract".

■ Even if the contract had been breached, the general rule of law is that the motive of a party breaching a contract is immaterial. None of the parties to this case have favored us with the citation of any authority from Tennessee that recovery is permitted in that State for tortious breach of contract. The District Judge cited no Tennessee authority to support that proposition and we have found none.

■ We have recently held that "tortious breach of contract" does not exist in Ohio outside of the insurance field. *Battista v. Lebanon Trotting Assn.*, 538 F.2d 111 (6th Cir. 1976). We believe that no such action of tortious breach of contract exists in Tennessee. In this case there could be no tortious breach of contract because the contract was not breached. The District Court erred in denying Celebration's motion for a directed verdict.

But there is more. There are problems of causation and whether either of the plaintiffs sustained any damage.

■ It is significant that the owner of the horse, Becker, was determined by the District Court to have proven no damage, but the horse's trainer, Roberts, was awarded ten thousand dollars. It is our opinion

---

1. The jury was instructed that there could be no recovery for the claimed loss in value of Replica Rebel T; the District Judge held that the parties agreed under the rules of the horse show that the owner would bear any such loss.

2. Of the three judges ranking the horses, only two testified at the trial.

that the proof indicated that neither one sustained any damage.

Roberts' attorney brought out from his client that if the horse had been in the ring all of the time, he would have had no complaint. This is obvious.

We also assume that if the horse had ranked first instead of eighth, there would have been no complaint. Roberts was then asked, "What is your complaint?" He answered: "My complaint is that in my opinion I was accused of breaking the federal law in front of several thousand people."

His opinion was not supported by an iota of evidence. No such accusation was ever made. Actually, the horse could have been excluded by the veterinarian for any number of reasons having no relation to soring. Furthermore, the horse was detained only for a few minutes when the clerical error was discovered and rectified. The first announcement over the public address system did not accuse Roberts of violating the law. With equal propriety, Becker, the owner of the horse, could have made the same claim, yet the District Court held that Becker had proved no damage.

Liability cannot be based on an opinion of a litigant.

If Roberts really believed he had been slandered by the conduct of Celebration's clerk, it is not understandable why he did not bring an action for slander rather than for breach of contract. There is of course, a difference between an action in contract and one in tort. He chose rather to bring a contractual action. Roberts' damage proximately resulting from a breach of contract does not include injury to his person or his reputation. This was not within the contemplation of the parties at the time the contract was entered into or allegedly breached. *Battista v. Lebanon, supra.*

It is also significant that there is no claim made here of any malice or lack of good faith on the part of Celebration. All that actually occurred was an unintentional clerical error which resulted in no damage.

Roberts' proof of damage was insufficient to support a verdict for anything other than nominal damages. He testified that he had been training thirty-three horses at one time, in 1968 or 1969. At the time of the show in 1973 however, this number had dwindled to only fourteen, of which five horses belonged to Becker. Shortly after the show, even Becker, who knew all of the facts, withdrew his five horses and Roberts then discontinued his horse-training business. It was a losing proposition to him, but not through any actionable fault of Celebration.

For error in denying the motion for a directed verdict, the judgment of the District Court is reversed and the cause is remanded for dismissal of the complaint.