George Q. MILWEE, Jr., et al., Plaintiffs,

v.

The PEACHTREE CYPRESS INVESTMENT COMPANY et al., Defendants and Plaintiffs-by-counterclaim,

v.

George Q. MILWEE, Jr., Defendant-by-counterclaim.

No. CIV–4–77–17.

United States District Court, E. D. Tennessee, Winchester Division.

Sept. 14, 1978.

Jordan Stokes, III, Nashville, Tenn., for plaintiffs.

H. Fred Ford, Nashville, Tenn., for defendants.

## MEMORANDUM OPINION

NEESE, District Judge.

This is a somewhat bizzare action arising from involved dealings relating to claimed interests in mountain land in this state. A bench trial of the original claim and the counterclaim was conducted by the Court on July 10, 1978.

Messrs. Herbert C. Leeming and Terry J. Aiken and Fred E. Filsoof, Esq. operated

businesses through two or more corporate entities in Atlanta, Georgia, one of which was the Peachtree Cypress Investment Company. They were interested in 1974 in the acquisition of interests in Tennessee mountain land. In their search therefor, they discovered that Mr. Luke Lea, of Nashville, Tennessee, had paralleling interests.

During that year, it came to the attention of Messrs. Leeming, Aiken and Filsoof that Tennessee Land and Development Company, Inc. (Land Company), a defunct Tennessee corporation, held arguably colorable titles to several hundreds of thousands of acres of Tennessee mountain land. They desired to acquire such land interests, and their investigation of the possibilities attendant to that discovery led them to a Mr. Duckworth who was connected with the Tennessee department of revenue.

They were advised by Mr. Duckworth of the statutory requirements of Tennessee for the reinstatement of a corporate charter which had been revoked by the state of Tennessee for the nonpayment of franchise and excise taxes. They determined to cause the necessary delinquent returns to be prepared and filed, the delinquent taxes to be paid, and to merge the defunct corporation with The Peachtree Cypress Investment Company.

The Land Company had been chartered by the state of Tennessee in May, 1948. It had failed to pay the aforementioned taxes for the fiscal year 1949, and its corporate charter was revoked for that reason on June 21, 1950. The interests that corporation claimed in the aforementioned land remained in the name of that corporation after the revocation of its charter. George Q. Milwee (Sr.), Esq. was the secretary of, and attorney for, that corporation; he owned 100 shares (10%) of the capital stock thereof and apparently claimed that such corporation was indebted to him for unpaid fees for his professional services.

On January 21, 1975 Messrs. Leeming, Aiken and Filsoof met with Mr. Duckworth. Delinquent tax returns for the Land Company for the fiscal years 1948–1974 (and until January 21, 1975) were filed, and $4,890.85 in past due taxes, interest and penalty were paid. To satisfy the commissioner of revenue of Tennessee " * * * that no third party [would] be injured by * * * reinstatement, * * * " T.C.A. § 67–2810, of the revoked charter of the Land Company, the first three immediately aforenamed persons, representing themselves, respectively, " * * * as [o]fficers * * * " of the Land Company signed and filed a statement that, " * * * if the charter of * * * " the Land Company were reinstated, " * * * no third party will be injured by such reinstatement."

The owners of the capital stock of the Land Company had agreed on May 23, 1949 that no certificates therefor would be issued by the corporation " * * * until some future meeting * * * " of such stockholders when " * * * two-thirds [sic] majority of the stock authorized to be issued may vote for the issuance of the stock. * * * " No certificates therefor were ever issued, although the Land Company's records reflect 1,000 such shares were outstanding, with, as stated, Mr. Milwee the owner of 100 such shares.

Mr. Milwee, the elder, died in 1959, and his son, Mr. George Q. Milwee, Jr. became the executor of his last will. He and Mr. John Milwee are the only beneficiaries of such estate.

After following the steps necessary to permit the Land Company's charter to be reinstated, on the same day, Messrs. Leeming, Aiken and Filsoof registered with the Tennessee secretary of state a pre-prepared agreement of merger between Peachtree Cypress Investment Company, Inc. and the Land Company, with the former being designated the surviving entity. It was represented in that document that the Land Company was " * * * wholly owned by Peachtree Cypress Investment Company, Incorporated, a Georgia corporation, * * * " and that the agreement involved and the attached plan of merger had been " * * * approved unanimously by the [d]irectors of Peachtree Cypress Investment Company, Incorporated. * * * " In the consolidation

plan, Messrs. Aiken, Filsoof and Leeming were named as directors of the surviving corporation. Mr. Aiken executed the plan as "President" of the Land Company; Mr. Leeming executed the plan as "President" of The Peachtree Cypress Investment Company, Incorporated; and both signatures were "attested" by Mr. Filsoof.

From the "real property" of the Land Company acquired in that merger, Messrs. Leeming and Aiken found about 27,000 acres of land, title to which was deemed not to be as clouded as some of the other property thus acquired. These 27,000 acres were transferred by The Peachtree Cypress Investment Company, Inc. to some other entity controlled by Messrs. Leeming and Aiken and, in turn, was sold to third-parties for a consideration of $250,000.

It is inferable reasonably that Mr. Lea learned of this sizeable transaction in Tennessee mountain land and of the fact of the Land Company's former claim of ownership. Mr. Lea communicated with Mr. James H. Marks, an advertising and marketing specialist, and suggested that Mr. Marks communicate with Mr. Milwee, Jr. At some point in the unfolding events, Mr. Milwee, Jr. had asserted to the defendants the claim of his father's estate, which was received by Mr. Leeming. Mr. Leeming "suspected" Mr. Lea's involvement in the demand of Mr. Milwee, Jr. Mr. Lea thereupon served as the catalyst to bring those competing interests into confrontation.

Two meetings took place in Nashville, Tennessee between Messrs. Marks and Leeming in about March, 1976. Mr. Filsoof wrote Mr. Marks on March 17 seeking certain documentation. On the 22nd of that month, Mr. Marks sent Mr. Leeming a mailgram, accusing him of engaging in "stalling tactics" and advising " * * * unless you are in Nashville on March 22 to make a settlement with cash in hand this fraudulent transaction will be referred to council [sic: counsel] for appropriate legal action." Responsive thereto, Mr. Filsoof wrote Mr. Milwee, Jr. directly, expressing a willingness to negotiate a settlement of the latter's claim but contending that the demands transmit-

ted by Mr. Marks " * * * if met would border on extortion. * * * " Mr. Milwee, Jr. responded to Mr. Filsoof, instructing him to " * * * act direct [sic] with Mr. James Marks, * * * " and advising that Mr. Marks had been instructed to commence suit 4 days afterward " * * * [u]nless this matter is handled immediately. * * * "

Mr. Milwee, Jr. invested Mr. Marks with power of attorney on April 5, 1976 " * * * to act in my behalf and my interest in the matter of the * * * Land * * * [Company], and the settlement of the estate of my late father * * *, to sign my name to all necessary documents pertinent to said matter and to execute all manner of legal and equitable forms in my name, where necessary, towards accomplishing the settlement of said estate and the matter pertaining to his interest in the said corporation; and to do * * * every act * * *, in law and equity needful * * * in and about the premises, as fully * * *, to all intents and purposes * * as I might or could do if acting personally. And I * * * ratify and confirm all lawful acts done by my said attorney. * * * " By their agreement, Mr. Lea became Mr. Marks' "partner" thereunder.

Negotiations of a settlement of the claim of his father's estate's and Mr. Milwee, Jr.'s personal claim proceeded, and, on April 13, 1976, Mr. Marks, as attorney in fact for Mr. Milwee, Jr., relinquished all Mr. Milwee, Jr.'s claims to the Land Company and sold, transferred, and assigned " * * * whatever right, title and interest * * * " he had in the Land Company. In consideration thereof, Mr. Marks, in his capacity as attorney-in-fact for Mr. Milwee, Jr., received Mr. Filsoof's (escrow account) check for $5,000; the personal, nonassignable promissory note of Messrs. Leeming and Aiken for $55,000 payable 90 days thereafter; and a similar note for $5,000 payable May 10, 1976. The latter note was paid with Mr. Filsoof's check on or about the due date, and Messrs. Marks and Lea divided the $10,000 in cash payments between them.

The larger note contained a provision that the makers would pay a penalty of $5,000 for any 30-day extension of its due

date. On July 13, 1976 Messrs. Aiken and Leeming gave Mr. Marks, as Mr. Milwee, Jr.'s attorney-in-fact, a note for $60,000, replacing the earlier $55,000 note with such a penalty added, payable in 30 days. This note was assignable and contained the same penalty provision, but not to exceed 11 months.

Mr. Marks released Mr. Leeming from his obligation on the aforementioned $60,000 note on April 4, 1977, leaving Mr. Aiken as the sole obligor thereon. The consideration for that release was " * * * Radio Network Air Time * * * " in the face amount of $30,000 but, less agency commissions, etc., of a value of about $27,000. Mr. Marks deemed this "time" useful to himself in his advertising and marketing endeavors. Mr. Marks has paid Mr. Milwee, Jr. nothing, and the latter has received nothing from Mr. Lea.

Some 6 weeks afterward, Mr. Milwee, Jr. inquired of Mr. Marks concerning the latter's discharge of his power of attorney. On May 18, Mr. Marks advised Mr. Milwee, Jr. by letter that " * * * Mr. Lea has not been keeping you informed * * * as he promised he would. * * * " The report of Mr. Marks was that the Land Company matter had been " * * * irrevocably settled with the other parties in Atlanta, * * * " although the entire amount of the settlement had not been " * * * tendered. * * " A settlement " * * * statement * * * " was promised Mr. Milwee, Jr. " * * * upon receipt of the contracted for consideration. * * * " Mr. Milwee, Jr. was forewarned that the matter was being handled by Mr. Marks' attorneys, and that " * * * any out-of-the-ordinary action [by Mr. Milwee, Jr.] would result in large bills from attorneys and myself."

Mr. Milwee, Jr. commenced this action *pro se.* Subsequently, counsel appeared for him, and his brother Mr. John Milwee intervened on December 16, 1977 as a plaintiff. The plaintiffs claimed initially that the conduct of the defendants had deprived them of their late father's 1/10 interest in the assets of the Land Company and demanded relief in the form of a declaration that the aforementioned merger of the two corporations was illegal and void as well as in the form of $25,000 in compensatory and $465,000 in punitive damages. Pretrial, the plaintiffs conceded that their attack on the corporate charters involved is *de jure* in nature and, as the state of Tennessee is not a party hereto, is collateral in nature, so that they lack standing to seek the annulment and setting aside of the aforementioned reinstatement of the Land Company's charter and the aforementioned merger. *Cf. Nashville Packet Co. v. Neville* (1921), 144 Tenn. 698, 703, 235 S.W. 64. They insist, however, that they have alleged with sufficient particularity, Rule 9(b), Federal Rules of Civil Procedure, circumstances constituting fraud on the part of the defendants in depriving them of their respective rights to the interest of their late father in the assets of the Land Company, and accordingly in the record "title" to the land the Land Company owned before those assets were acquired in the aforesaid merger.

■ The plaintiffs do not appear to have alleged and proved all the traditional elements of the common law tort of fraud, misrepresentation and deceit. Under Tennessee law, two of these elements are a representation by the defendant *to* the plaintiff of an existing or past fact as opposed to an opinion or a conjecture as to future events, and a reasonable reliance *by* the plaintiff *on* the misrepresented material fact. See *Edwards v. Travelers Insur. of Hartford, Conn.,* C.A. 6th (1977), 563 F.2d 105, 110–113 (which contains an excellent exposition concerning this tort in Tennessee by (now Senior) Circuit Judge John Weld Peck).

■ As the emphases added to those foregoing rules indicate, a representation to the plaintiffs the Messrs. Milwee by the defendants, and reliance by the plaintiffs the Messrs. Milwee on the misrepresented fact were required to constitute this tort. Herein, the plaintiffs claim, as the false representation and misrepresented material fact, the aforementioned statements of Messrs. Leeming, Aiken and Filsoof to the Tennessee commissioner of revenue that each of the latter was an officer of the

Land Company, and that reinstatement of the charter of the Land Company would not harm any third party. In this context, the plaintiffs were such "third parties."

For such reason, it is the decision of this Court that the plaintiff Mr. George Q. Milwee, Jr. and the intervening plaintiff Mr. John B. Milwee take nothing from the defendants Peachtree Cypress Investment Company, Inc. and Messrs. Herbert C. Leeming, Terry J. Aiken, and Fred E. Filsoof, Esq. Rule 58(1), Federal Rules of Civil Procedure.

■ The plaintiff-by-counterclaim Peachtree Cypress Investment Company, Inc.[1] claims that the defendant-by-counterclaim Mr. Milwee, Jr. breached his agreement of April 13, 1976, *supra*, with it, by failing to defend it against the claim herein of the intervening plaintiff Mr. John B. Milwee as a claimant under his late father as an original stockholder of the Land Company.[2] Mr. Leeming testified as to the expenses incurred in this litigation, and Mr. Filsoof, Esq. testified as to the amount of time he had lost from his profession as a result of it. There was no testimony, however, as to the amount of *additional* damages Peachtree Cypress Investment Company, Inc. sustained as a result of having to defend this matter against the claim by the intervening plaintiff Mr. John B. Milwee.

■ To set a damage figure on the counterclaim arbitrarily is impermissible; it would not constitute a reasonable inference from the fact of the damages proved in the defense of both plaintiffs' claim as a whole but would be pure guesswork. *Agricultural Services Ass'n, Inc. v. Ferry-Morse Seed Co., Inc.*, C.A. 6th (1977), 551 F.2d 1057, 1072[32–34]. Damages are not permitted which are speculative in nature. *Idem.* Thus, the Court is reduced to an award on the counterclaim of only nominal damages for the breach by Mr. Milwee, Jr. of his contract. As has been said in this state:

"Upon breach of a valid and binding contract, the law infers some damages, and generally the person guilty of the breach is liable at least for nominal damages, if actual damages cannot be proved. * * * "

*Morristown Lin Mer, Inc. v. Lotspeich Pub. Co.*, C.A.Tenn. (1956), 42 Tenn.App. 92, 106[13], 298 S.W.2d 788, certiorari denied (1956); see and *cf.* also *Coupe v. Royer* (1895), 155 U.S. 565, 583, 15 S.Ct. 199, 206, 39 L.Ed. 263, 270 (headnote 6), (for infringement of a patent). Accordingly, this Court fixes the amount of nominal damages on the counterclaim at $1. " * * * One dollar is the amount usually adjudged where only nominal damages are allowed. * * * " 22 Am.Jur. (2d) 22, Damages, § 6.

It is the resulting decision of this Court that the plaintiff-by-counterclaim Peachtree Cypress Investment Company, Inc. recover of the defendant-by-counterclaim George Q. Milwee, Jr. the sum of $1. Rule 58(1), *supra.*

### On Motion For New Trial

The plaintiff Mr. John B. Milwee moved timely for a new trial herein, or, alternatively, for the Court to alter or amend its findings, conclusions and judgment herein. Rules 52(b), 59(a), (b), (e), Federal Rules of Civil Procedure. The motion lacks merit in each such alternative and hereby is

OVERRULED.

■ " * * * A party who failed to prove his strongest case is not entitled to a second opportunity by moving to amend a finding of fact and a conclusion of law. * * * " 9 Wright & Miller, Federal Practice and Procedure: Civil 722, § 2582. Mo-

---

1. The individual defendants undertook also to assert a counterclaim against the original plaintiff; but, obviously, Mr. Milwee, Jr. contracted only with the plaintiff-by-counterclaim Peachtree Cypress Investment Company, Inc. to defend. (See footnote 2, *infra*.) The counterclaim of the other plaintiffs-by-counterclaim, accordingly, hereby are DISMISSED as failing to state a claim on which relief could be granted. Rule 12(b)(6), Federal Rules of Civil Procedure.

2. Thereunder, "SELLER [Mr. Milwee, Jr.] agree[d] * * * to defend against any and all claims from any original stockholder or [sic] claiming thereunder of the said Corporation [the Land Company]." The "BUYER" and only other party thereto was Peachtree Cypress Investment Company, a Georgia corporation.

tions made under the aforecited rules are not intended to be utilized to relitigate old matters nor to allow a party to present his case under a new theory; these motions are designed to correct manifest errors of fact or law or as vehicles to present newly discovered evidence. *Evans, Inc. v. Tiffany & Co.*, D.C.Del. (1976), 416 F.Supp. 224, 244[16]. A motion for a new trial in a nonjury case should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons. 11 Wright & Miller, *supra*, at 37, § 2804.

This Court is not convinced that it committed a manifest error of either fact or law. Mr. Milwee was not entitled to any recovery herein except to the extent that he had a cause of action cognizable under the Tennessee law. See *Becker v. Celebration, Inc.*, C.A. 6th (1976), 541 F.2d 156, 158[3]. " * * * Liability cannot be based on an opinion of a litigant. * * * " *Ibid.*, 541 F.2d at 159.