In the Matter of MARTIN PLACE HOSPITAL, Debtor.

BLUE CROSS AND BLUE SHIELD OF MICHIGAN, INC., Appellant,

v.

MARTIN PLACE HOSPITAL, Appellee.

Bankruptcy No. 77–92144–H.
Civ. No. 80–71367.

United States District Court,
E. D. Michigan, S. D.

Jan. 20, 1981.

---

Lawrence K. Snider, Jaffe, Snider, Raitt, Garratt & Heuer, P.C., Detroit, Mich., for appellant.

Irving A. August, August, Thompson, Sherr, Clarke & Schafer, P.C., Birmingham, Mich., for appellee.

Alexander G. Andrews, Detroit, Mich., for receiver.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

On September 2, 1977, Martin Place Hospital, a Michigan nonprofit corporation, filed a petition for an arrangement under Chapter XI of the Bankruptcy Act of 1898. Bankruptcy Act, Ch. 541, 30 Stat. 544 (1898) (*current version at* 11 U.S.C.A. §§ 101–151326 (West 1979)) (hereinafter "Old Act"). On September 19, 1977, the bankruptcy court authorized the receiver of the hospital, Alexander Andrews, to retain Irving A. August, of August, Thompson, Sherr, Clarke & Schafer, P.C., as general counsel.

As of this date, August has filed six (6) applications for interim compensation with the bankruptcy court pursuant to Rule 219(a) of the Rules of Bankruptcy Procedure, 11 U.S.C.A. (West 1977). Blue Cross and Blue Shield of Michigan, Inc. (hereinafter "Blue Cross"), a major creditor of Martin Place Hospital and the appellant herein, has filed objections to five out of the six applications. This appeal involves the compensation award entered pursuant to the third and fourth applications.

In April of 1979 Blue Cross appealed from the bankruptcy court's order awarding a $80,000 compensation allowance pursuant to the second application filed by August. On November 21, 1979, this Court issued an order remanding the issue to the bankruptcy court for further proceedings.

It was the opinion of this Court that the bankruptcy court abused its discretion in awarding August a fee of $80,000 without regard to the number of hours of services performed and without giving consideration to the relative value of the services performed by himself and by his associate, Rae Lee Chabot. Cross-appeals from the foregoing order have been filed with the U.S. Court of Appeals for the Sixth Circuit, where the issue is presently awaiting oral argument.

The effect of this Court's order was to authorize fees for August at $125.00 per hour and for Chabot at $50.00 per hour, with a maximum allowable fee of $50,-218.75. While the Court does not believe the Court's disposition of the appeal with respect to the second application was totally inappropriate, in hindsight it is the opinion of the Court that it would have been better to remand the matter for a testimonial hearing, as is being done on this appeal.

On March 11, 1980, the bankruptcy judge entered an order awarding August the sum of $13,250.00 for 132.5 hours and $13,450.00 for 133.75 hours of services rendered pursuant to the third and fourth applications, respectively. In the third and fourth applications, covering the period from September of 1978 to January of 1980, August sought compensation for legal services performed in the defense of medical mal-

practice suits filed against the hospital as well as those rendered pursuant to the general retainer. The reasonableness of the bankruptcy court's compensation award for the services performed pursuant to the general retainer is not an issue on this appeal.

In its opinion of April 21, 1979, the bankruptcy court set forth its findings with respect to the third and fourth applications for interim compensation. Specifically, the court found that the medical malpractice services compensated by the March 11, 1980 order were necessary to continue operation of the hospital and that the award constituted final and total compensation for the services rendered.

The narrow issue on appeal is whether the bankruptcy court abused its discretion in awarding counsel for the receiver a lump sum fee which amounted to compensation of $100.00 per hour for medical malpractice defense work performed primarily by an associate of the firm [1] who became licensed to practice law in 1977.

Blue Cross does not dispute that the services compensated by the March 11, 1980 order of the bankruptcy court constituted professional services,[2] were actually rendered, and were competently performed. Neither does it take exception with the bankruptcy court's finding that the services were necessary to the continued operation of Martin Place Hospital and, as such, could be fully compensated prior to the completion of the bankruptcy proceeding.[3] Blue Cross does argue that the bankruptcy court erred in finding that the principle of strict economy does not apply to an interim fee applicant who renders legal services in aid of the continued operation of the debtor's business.

The bankruptcy court found that the compensation award for medical malpractice defense work was governed by the decision in *In re Great American Management and Investment*, 5 Bankr.Ct.Dec. 87, 19 C.B.C. 431 (N.D.Ga.1979). The court in *Great American* allowed interim fee awards approximating full hourly compensation for services rendered in the ordinary course of the debtor's business. This ruling was characterized by the Georgia district court as being "in derogation of the legal standard of strict economy." *Id.* 89. On the basis of this characterization, the bankruptcy court found that the strict economy principle was not applicable to the attorney fee award at issue.

■ Under Rule 219(c)(1) of the Rules of Bankruptcy Procedure, 11 U.S.C.A. (West 1977), one of the factors the bankruptcy court should consider in awarding compensation for services rendered in bankruptcy proceedings commenced under the Old Act [4] is the conservation of the debtor's estate. This factor embodies the long-standing

---

1. Services rendered by an associate of the firm of the retained attorney may be compensated as services of the retained attorney without further court order. Rules Bankr.Proc. Rule 215(f), 11 U.S.C.A. (West 1977).

2. Under Rule 219(c)(3) of the Rules of Bankruptcy Procedure, 11 U.S.C.A. (West 1977), an attorney can be compensated "only for professional services."

3. Courts have generally held that interim fee allowances should be "well below any final compensation." *In re Multiponics, Inc.*, 551 F.2d 1049, 1050 (5th Cir. 1977); *In re Imperial "400" Nat'l, Inc.*, 432 F.2d 232, 235 (3d Cir. 1970); *Lutheran Hosps. & Homes Soc'y of Am. v. Deucy*, 422 F.2d 200, 205 (9th Cir. 1970). This limitation on fee applications filed prior to the completion of the bankruptcy proceeding was viewed as an incentive for a more expeditious resolution of the bankruptcy proceeding itself. Where the services are rendered in the ordinary course of business of the debtor's es-

tate and would have been performed even if no bankruptcy proceeding had been commenced, the potential for procrastination and, therefore, the need for this limitation is not as great. *See In re Great American Management and Investment*, 5 Bankr.Ct.Dec. 87, 19 C.B.C. 431 (N.D. Ga.1979).

4. Since the bankruptcy proceeding giving rise to the issue on appeal was commenced prior to October 1, 1979, the effective date of the "new" Bankruptcy Code, 11 U.S.C.A. §§ 101–151326 (West 1979), the Bankruptcy Act of 1898 governs the issue on appeal. Act of Nov. 6, 1978, Pub.L. 95–589, § 403(a), 92 Stat. 2683. The applicability of the Old Act is important in this case in view of the abandonment of the principle of strict economy under the present Code. *See* H.R.Rep.No.595, 95th Cong., 1st Sess. 330 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

principle of strict economy underlying the Bankruptcy Act of 1898 and adopted by the U.S. Court of Appeals for the Sixth Circuit. *Cle-Ware Industries, Inc. v. Sokolsky*, 493 F.2d 863 (6th Cir. 1974). In *Cle-Ware* the Sixth Circuit was called upon to review an allowance of attorneys' fees entered by the bankruptcy court at the conclusion of a Chapter XI bankruptcy proceeding. The attorneys' fees at issue involved services rendered by the attorney for the debtor in the course of the bankruptcy arrangement and those rendered in the ordinary course of the debtor's business by the attorney for the debtor-in-possession. The *Cle-Ware* court prefaced its analysis of the reasonableness of both fee awards by stating: "In determining whether the fees awarded counsel were excessive, we are guided by the economic spirit of frugality that underlies the Bankruptcy Act." *Id.* 868. The economy principle, as the authorities cited by the court in *Cle-Ware* indicate, is most commonly manifested in lower than average fee awards in bankruptcy cases. The principle of strict economy is an attempt to limit the drain on the resources of an already financially crippled estate. Such a drain occurs whenever compensation is awarded in bankruptcy cases regardless of the type of service compensated. Therefore, this Court finds that the general principle of strict economy underlying the Bankruptcy Act of 1898 should be a factor in any attorney fee allowance awarded under the Old Act, even if pursuant to an interim application involving services rendered in the ordinary course of the debtor's business.

Blue Cross also contends that in awarding the compensation allowance for medical malpractice defense work pursuant to the third and fourth applications, the bankruptcy court failed to consider the degree of experience of the associate rendering the services.

In reviewing the reasonableness of the March 11, 1980 compensation award, this Court is guided by the recent Sixth Circuit pronouncement on the issue of attorney fee awards in *Northcross v. Board of Education of Memphis City Schools*, 611 F.2d 624 (6th Cir. 1979). Disturbed by the wide disparity in attorney fee awards and noting that many such awards are rendered unreviewable by the inadequacy of the record below, the court in *Northcross* enunciated a specific approach to the determination of attorney fees. In essence, this approach contemplates a two-step analysis: (1) The calculation of the number of hours of services provided and (2) the determination of the reasonable hourly rate for those services. *Id.* 636–39. The court's determination with respect to each step must be accompanied by "clear and adequate findings of fact." *Id.* 636. Under the *Northcross* approach, in determining the appropriate hourly rate for each type of service rendered, the court should be guided by the fair market value of such a service, which, in turn, reflects the training, background, experience, and skill of the attorney rendering the service. *Id.* 638. In addition, as the Sixth Circuit noted in *Cle-Ware*, the court should consider the opinion evidence submitted by the parties in determining the reasonableness of the fee award.[5] 493 F.2d at 875.

Although the foregoing approached was developed by the Sixth Circuit in the context of the Civil Rights Attorney's Fees Awards Act, 42 U.S.C.A. § 1988 (West Supp.1979), the same problems that plague attorney fee awards in the civil rights area are prevalent in any attorney fee award situation. In fact, an expansion of the *Northcross* approach beyond the civil rights setting has already occurred. In *Central States Southeast & Southwest Areas Pension Fund v. Hitchings Trucking, Inc.*, 492 F.Supp. 906 (E.D.Mich.1980), the court found the *Northcross* decision to be controlling on the issue of attorney fees awarded under the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001–1381 (West Supp.1980). *Id.* 910.

The need for a general adoption of the *Northcross* approach becomes evident from the review of the record at hand. Although the bankruptcy court noted the

---

5. Such opinion evidence was proffered in this matter. Blue Cross submitted five affidavits indicating that private firms engaged in medical malpractice defense work charged from $50–$55/hour for legal services performed by associates of the firm.

factors to be considered in determining the reasonableness of the fee award, the court did not make specific findings of fact with respect to any of the factors. Neither did the court assess an hourly rate for each type of service. In declining to make an hourly rate assessment, the bankruptcy court expressed concern that such an assessment would be in direct conflict with the decision of the United States Supreme Court in *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). This concern is without merit, since the maximum allowable fee for each service would be determined by the court and not a group of attorneys acting in collusion.

In view of the foregoing, it is the opinion of this Court that this matter should be remanded to the bankruptcy court for an evidentiary hearing to determine a reasonable hourly rate for the services compensated by the March 11, 1980 order of the bankruptcy court. In assessing the appropriate attorney fee award, the bankruptcy court should follow the specific approach for the determination of attorney's fees set forth in *Northcross, supra*, and should apply the rule of strict economy as mandated by the Sixth Circuit in *Cle-Ware, supra*.

An appropriate order will be entered.