**In re Andrew E. CAFFERKY, Sr. and Martha Horn Cafferky, Bankrupts.**

**Bankruptcy Nos. 75–1418, 75–1364.**

United States Bankruptcy Court, M.D. Tennessee.

March 30, 1984.

C. Kinian Cosner, Jr., Stephen M. Traut-man, Herman L. Trautman, Nashville, Tenn., for bankrupts.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on the bankrupt's objection to a portion of the application by Stephen M. Trautman, attorney for the trustee, for attorney's fees and costs. The parties to this litigation approached the court in December of 1983, and requested an expedited hearing in order that the estate could avoid tax liability for 1984. In accordance with this court's duty under the former Bankruptcy Act to insure an economic administration of the estate, this court granted an expedited hearing on December 30, 1983, and rendered an opinion from the bench at the conclusion of said hearing.[1] Upon consideration of the evidence presented at the hearing, stipulations, exhibits and the entire record, this court awarded Stephen M. Trautman (hereinafter referred to as the applicant), additional compensation in the amount of $34,527.89 for attorneys fees and costs. This court denied the applicant compensation for 250 hours spent in a prolonged and unnecessary attempt to resolve a tax matter with the Internal Revenue Service (hereinafter referred to as the IRS).

The applicant has filed a motion with this court to alter or amend the order entered in this proceeding on December 30, 1983, disallowing compensation for 250 hours of legal services and the applicant has requested a partial new hearing. Upon consideration of the evidence presented at the hearing, stipulations, exhibits and the entire record, this court ORDERS that the applicant's motion to alter or amend as well as the applicant's motion for a partial new hearing are DENIED.

The following shall represent findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

On November 10, 1975, the applicant began work as the attorney for the trustee in

---

1. Since the case giving rise to this proceeding was commenced prior to October 1, 1979, the effective date of the Bankruptcy Code, 11 U.S. C.A. §§ 101 *et seq.* (West 1979), the Bankruptcy Act of 1898 governs the issues in this proceeding. Act of Nov. 6, 1978, Pub.L. 95–598, § 403(a), 92 Stat. 2683. The applicability of the former Bankruptcy Act is particularly important in this case due to the abandonment of the principle of strict economy under the present Bankruptcy Code. *Blue Cross and Blue Shield of Michigan, Inc. v. Martin Place Hospital,* 8 B.R. 770, 772 n. 4 (D.C.E.D.Mich.1981); See H.R.Rep. No. 595, 95th Cong., 1st Sess. 330 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787.

this estate. The applicant's work can be roughly divided into three separate categories. The litigation of a testamentary trust issue, accounting of funds received by the estate from the testamentary trust and activities to resolve a controversy with the IRS concerning the tax liability of the estate. On December 23, 1981, the applicant received an interim allowance of $37,500.00 as compensation for 577 hours of legal work performed for the estate. In this proceeding, the applicant is seeking compensation for 708.7 hours. Although the court must examine the total application, objections have been raised only to that portion of the application relating to work performed in regards to the IRS claim.

The applicant was hired in 1975. His initial task was to defend the estate in a suit initiated by the Third National Bank which sought a judgment from the bankruptcy court adjudging that the interests of the bankrupt in a testamentary trust were not part of the bankruptcy estate. Subsequently, Third National Bank dismissed its complaint and began paying the bankrupt proceeds from the testamentary trust. The applicant then filed suit seeking certain funds from the testamentary trust for the estate.

On July 8, 1976, the applicant tried the testamentary trust case before the bankruptcy court in a two and one-half hour trial. During this short trial, several attorneys represented interests adverse to the estate for little or no compensation. The estate prevailed at the trial and was awarded certain interests in the bankrupt's testamentary trust. On appeal, the applicant successfully defended the trial court decision by brief in the district court and by brief and oral argument in the Sixth Circuit Court of Appeals.

After the trust issue was resolved, the applicant engaged in an accounting to determine whether or not the estate had received the funds to which it was entitled. This accounting was also necessary so the estate could respond to tax claims asserted by the IRS.

On March 23, 1981, Judge Paul E. Jennings ordered the trustee to resolve the tax claim asserted by the IRS as expeditiously as possible, either by agreement or by appropriate litigation. The trustee claimed that the bankruptcy estate was not a taxable entity while the IRS asserted that the bankruptcy estate was taxable under subchapter J of the Internal Revenue Code. Despite this court's attempt to end the prolonged administration of this estate, the applicant failed to resolve the tax matter until December 30, 1983, two and one-half years later. During this time period, the applicant expended 450 hours to achieve a claimed tax savings of $63,000.00.[2] The bankrupt has objected to the applicant's handling of the IRS tax claim arguing that the applicant's claim for fees in the amount of $33,750.00 is excessive.

The applicant testified at trial that confusion existed as to which office of the IRS had the authority to resolve this particular tax dispute. Instead of placing the tax dispute in a posture from which the estate could litigate the claim in the bankruptcy court, the applicant involved the estate in lengthy discussions with various departments of the IRS. The confusion over the proper administrative office to handle settlement discussions with the estate resulted in the estate engaging in the same or similar settlement discussions on at least two separate occasions. A settlement was reached with the appellate division of the IRS regional commissioner's office only to have that settlement questioned by the IRS

2. Upon questioning by the court, the applicant stated that the IRS claimed taxes from the estate for the year of 1982 in the amount of $17,800.00 plus interest. The applicant also testified that the IRS had assessed a tax claim against the estate for the tax year of 1983 but that the settlement agreement with the IRS anticipated that the estate's income would be offset by applicant's fee as well as administration expenses. The court notes that the tax claims for 1982 and 1983 could have been avoided if the estate had resolved the matter with the IRS in a more expeditious manner. Thus, the court views the applicant's claim of a $63,000.00 tax savings with some skepticism; however, for the purposes of this proceeding, the court has accepted the applicant's claimed tax savings.

district counsel's office. The applicant finally, after two years, proceeded to court where a settlement agreement was reached with the tax division of the Department of Justice within approximately six months.

At trial, the applicant failed to present any independent expert proof on the benefits provided to the estate by his tax work. The applicant offered his own testimony as well as that of M. Taylor Harris, Jr., Esq., a recognized expert in bankruptcy law. On cross-examination, Mr. Harris admitted that he was not a tax lawyer and, therefore, could not address the issue of the novelty of the particular tax questions handled by the applicant. However, he did testify that the total fee request would be reasonable even if tax services had not been rendered because of the result obtained. This addressed the recovery in the trust litigation, not the tax claim which was before the court.

The bankrupt offered the testimony of a tax expert, Joseph W. Gibbs, Esq. to substantiate its claim that the fee request for tax services was unreasonable. Mr. Gibbs had knowledge of the tax problem encountered by the estate through discussions with a member of his law firm who had represented the bankrupts. Based on these discussions as well as a review of the applicable authorities, Mr. Gibbs testified that the applicant had not resolved the tax issue facing the estate in either the most expeditious or appropriate manner. He concluded that the applicant should have filed a tax return with the appropriate documentation showing no tax due. This action would have placed the estate in a position to litigate and to resolve the IRS tax claim as soon as the IRS notified the estate that the return was inappropriate and assessed a deficiency against the estate. Mr. Gibbs testified that with this approach only 100 to 200 hours of legal work would have been necessary to resolve the tax issue.

The bankrupts further alleged that the entire tax issue could have been avoided if the trustee had converted the liquidating bankruptcy to a reorganization under the Bankruptcy Act. Although this was not fully developed, the evidence established that it was never considered by either the applicant or the trustee when it may have been the most economical method of dealing with the tax controversy. This court is incredulous that such a simple option which would have obviated the need of hundreds of attorney hours was not considered.

■ Since this proceeding is related to a case commenced under the former Bankruptcy Act, all substantive and procedural issues are governed by the former Bankruptcy Act. Act of Nov. 6, 1978, Pub.L. No. 95–598, § 403(a), 92 Stat. 2683. Under the former Bankruptcy Act, the court has a duty, regardless of whether or not objections are filed, to determine whether the compensation requested is reasonable. *In re Detroit International Bridge Co.*, 111 F.2d 235 (6th Cir.1940); *York International Building, Inc. v. Chaney*, 527 F.2d 1061 (9th Cir.1975). The burden of establishing the reasonableness of a fee rests upon the party making the application. *Woods v. City National Bank and Trust Co.*, 312 U.S. 262, 267, 61 S.Ct. 493, 496, 85 L.Ed. 820, 825 (1941); *Matter of Aldersgate Foundation, Inc.*, 10 B.R. 910, 918 (Bkrtcy. M.D.Fla.1981); *In re Crutcher Transfer Line, Inc.*, 20 B.R. 705, 710 (Bkrtcy.W.D. Ky.1982). In this circuit, the criteria for determining reasonable compensation were enunciated in the familiar case of *Cle-Ware Industries, Inc. v. Sokolsky*, 493 F.2d 863 (6th Cir.1974).

Although this court would have reached the same determination if this were a Code case, the court is guided in the present fee determination by the spirit of frugality found in the former Act. *Cle-Ware* at 867–868. This was articulated in Rule 219 of the former Rules of Bankruptcy Procedure.[3] Courts strictly applied this principle

---

**3.** Rule 219 of the Federal Rules of Bankruptcy Procedure under the former Act states in pertinent part:

"(c) Factors in Allowing Compensation.

(1) General. The compensation allowable by the court to a trustee, receiver, marshal, attorney, accountant, or other person entitled to compensation for services rendered in the

noting that "the principle of strict economy is an attempt to limit the drain on the resources of an already financially crippled estate." *Blue Cross and Blue Shield of Michigan, Inc. v. Martin Place Hospital,* 8 B.R. 770, 773 (D.C.E.D.Mich.1981); *In re Pierce,* 1 B.R. 532, 533 (Bkrtcy.S.D.Ohio 1979).

■ Under *Cle-Ware* and its progeny, this court must take into account a number of factors in determining whether or not the applicant's fee request is reasonable. These factors include the amount of work done, the difficulties of the problem presented, the skill required and experience of counsel in similar cases, the results accomplished, the amount involved in connection with services rendered, the size of the estate, the length of time consumed, contingency or certainty of compensation, the expeditious performance of legal services, and the professional quality of the services rendered. *Cle-Ware* at 869, 869 n. 5; *In re Crutcher Transfer Line, Inc.,* 20 B.R. 705, 710 (Bkrtcy.W.D.Ky.1982). While the court must consider the time spent in providing services to the estate, it is not bound by it alone. "Hours alone are a false criterion that can result in the reward of inexperience, inefficiency and incompetence." *In re Grady,* 18 COLLIER BANKR.CAS. (MB) 96, 109 (Bkrtcy.S.D.Iowa 1978); *In re Crutcher Transfer Line, Inc.,* 20 B.R. 705, 710 (Bkrtcy.W.D.Ky.1982).

This court has reviewed all three areas in which the applicant worked in light of the *Cle-Ware* standards and is convinced that the applicant's fee request for services rendered in regard to the trust issue and the accounting are supported by the evidence. The court is not convinced, however, that the applicant has established he is entitled to a fee of $33,750.00 for the tax work he performed.[4]

administration of a bankrupt estate shall be reasonable, and in making allowances the court shall give due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors."

■ The applicant's fee request as well as his testimony at trial established that his trust work and subsequent accounting turned the estate from a no asset estate to one with present assets of approximately $389,000.00. In addition to interim compensation of $37,500.00, the applicant has requested additional compensation for these services in the amount of approximately $19,000.00. No objections have been made to this additional compensation and this court finds that the compensation should be awarded. Since the applicant made no lodestar request for additional compensation, the court did not need to address this issue. *In re Federal Copper of Tennessee, Inc.,* 19 B.R. 177 (Bkrtcy.M. D.Tenn.1982).

In determining the reasonableness of the fee request for tax work performed, this court must analyze the benefits received by the estate from that specific work. The court cannot attribute the benefits received by the estate from the applicant's work in the trust litigation or accounting area to his fee request for tax work.

The applicant spent 450 hours working on the estate's tax problem for a claimed savings of $63,000.00. None of this work was related to turning the estate from a no asset estate to an estate of approximately $389,000.00. At trial, Mr. Gibbs testified that the most expeditious and the most appropriate manner to handle the estate's tax problem would have been to litigate the issue as soon as possible. This is borne out by the fact that the applicant was unable to resolve the tax issue until he proceeded with appropriate litigation which Judge Jennings directed or, at a minimum, suggested in his order of March 23, 1981. Further, the applicant failed to consider and advise the trustee of alternative methods of handling the estate's tax problem which may have avoided the entire problem.

4. The applicant has requested an hourly fee rate of $75.00. No objection has been made to this rate and this court finds that such a rate is reasonable.

In light of the evidence and its duty to insure the economic administration of the estate, this court can only conclude that the applicant's request for compensation for 450 hours of tax related legal services is not reasonable. Mr. Gibbs testified that 100 to 200 hours of legal services would have been a reasonable amount of time within which to resolve the tax issue. To give the applicant every benefit of Mr. Gibbs' testimony, the court awarded the maximum figure of 200 hours at the requested rate of $75.00 per hour.

On January 9, 1984, the applicant filed a motion to alter or amend this court's order denying him compensation for 250 hours of legal services provided to the estate for tax related work and a motion requesting a partial new hearing. The power to grant or deny this motion is within the informed discretion of the court. The court should grant the motion to correct manifest errors of fact or law or as vehicles to present newly discovered evidence. *Huff v. Metropolitan Life Insurance Company*, 675 F.2d 119, 122 (6th Cir.1982); *Milwee v. Peachtree Cypress Investment Company*, 510 F.Supp. 284, 289–290 (E.D.Tenn.1978). Courts have recognized that motions to alter or amend as well as motions for a new trial should not be used to allow a party to relitigate old matters. *Milwee* at 290; 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2804, at 37 (1973). The applicant must establish sufficient grounds to sustain his motion to alter or amend this court's order entered on December 30, 1983, and his motion requesting a partial new hearing.

The applicant raises several issues this court feels compelled to address. First, the applicant argues the court should not consider the testimony of Mr. Gibbs, a knowledgeable and credible witness, because he is a member of the tax department of the law firm which has represented the bankrupt throughout this bankruptcy case. The court was aware at trial of Mr. Gibbs' position with the bankrupt's law firm and notes that the applicant failed to cross-examine Mr. Gibbs to show any alleged bias. The applicant admitted in his opening statement that no real grounds for bias existed on behalf of the bankrupt and accordingly on behalf of the bankrupt's law firm. "In view of the post-petition interest that is available and the claim for post-petition interest, it would seem that there is no financial benefit here to the bankrupt to this objection." (Tr. p. 5–6, ln. 23–1).

Second, the applicant claims that the court should not consider the testimony of Mr. Gibbs due to the fact that he had no first hand observation of the work performed by the applicant. Mr. Gibbs testified as a tax expert, basing his observations on his knowledge of the particular tax situation faced by the applicant and on his expertise in the tax area. If this court were to accept the applicant's argument that expert testimony must be based on first hand observation, the purpose of expert testimony as provided for in the Federal Rules of Evidence would be totally eviscerated.

Third, the applicant argues that Mr. Gibbs' testimony was merely a generalization and that he should be allowed a partial new hearing in which to enter additional testimony from Mr. Gibbs. Mr. Gibbs testified that "what I am stating is how long I think would be an amount of time appropriate to settle this controversy." (Tr. 56, ln. 18–20). His testimony focused upon the tax controversy and was not a mere generalization as asserted by the applicant.

Fourth, the applicant asserts that the court erred in accepting the testimony of Mr. Gibbs since he testified that he had no objection to the manner in which the trustee proceeded. The applicant apparently misunderstands the nature of the hearing in which he was a party. The bankrupt objected to the applicant's fee and offered the expert testimony of Mr. Gibbs in support of his objection. Mr. Gibbs testified that the applicant handled the estate's tax controversy in an unnecessarily time consuming manner.

Fifth, the applicant requests a partial new hearing in which Mr. Gibbs, an officer of the court, would apparently change his

testimony. This court will not allow the applicant to retry a case in which he had ample opportunity to cross-examine the expert witness and to present his own evidence.

Sixth, the applicant relies upon the allegation that Judge Jennings failed to object to the manner in which the trustee and the applicant proceeded with the tax issue. Judge Jennings ordered an expeditious termination of the tax controversy; however, the issue concerning whether or not the parties complied with his order and whether the applicant properly handled the tax controversy was never brought before him. This court is dealing with those issues.

Finally, the applicant cites the case of *Gilbert v. United States (In re Statmaster Corp.)*, 465 F.2d 978 (5th Cir.1972), as authority for the proposition that the applicant was unable to resolve the tax matter in any manner other than that in which he proceeded. In the case of *In re Statmaster Corporation*, the Fifth Circuit held that the bankruptcy court had no jurisdiction to render a declaratory judgment in a tax matter. In the case at bar, Mr. Gibbs testified as to the most expeditious manner in which to handle the estate's tax controversy. This method did not include seeking a declaratory judgment but required the applicant to file a return, wait until the IRS assessed a deficiency and file appropriate litigation. The applicant's reliance on *In re Statmaster Corporation* is mistaken and unfounded.

Accordingly, the court entered an order awarding the applicant the sum of $34,-527.89 for additional attorney's fees and expenses incurred as attorney for the trustee. The court disallowed compensation in the amount of $18,750.00 for legal services rendered by the applicant concerning the estate's tax controversy. The court will further order that the applicant's motion to amend or alter this court's order of December 30, 1983, as well as the applicant's motion for a partial new hearing, are DENIED.

IT IS, THEREFORE, SO ORDERED.