**SURGIDEV CORPORATION, a California corporation, Appellee,**

v.

**EYE TECHNOLOGY, INC., a Delaware corporation; Robert J. Fitzsimmons; Frederick G. Kalfon; Debra J. McCoy; James A. Greiling, Appellants.**

No. 86–5465.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1987.

Decided Sept. 4, 1987.

Duane W. Krohnke, Minneapolis, Minn., for appellants.

Paul L. Gardner, Los Angeles, Cal., for appellee.

Before ROSS,[*] Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Eye Technology, Inc., and four of its associates (collectively, "ETI"), all former employees of Surgidev Corporation, appeal from the district court's [1] orders enjoining ETI from engaging in certain business activities as a result of its misappropriation of Surgidev trade secrets and its tortious interference with Surgidev's contractual relations. *See Surgidev Corp. v. Eye Tech-*

---

[*] The Honorable Donald R. Ross, an active Judge of this court at the time this case was submitted, took senior status on June 13, 1987.

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

*nology, Inc.,* 648 F.Supp. 661 (D.Minn. 1986). ETI challenges certain factual findings supporting the propriety and length of the injunction, disputes the conclusion that ETI tortiously interfered with one of Surgidev's contractual relationships, and contests the district court's refusal to modify its order based on ETI's acquisition of another company. We affirm the orders of the district court.

The district court's opinion outlines the factual background of this litigation in generous detail. Briefly, Surgidev manufactures intraocular lenses ("IOLs"), devices that are surgically implanted by ophthalmologists to restore the vision of many cataract patients. The primary buyers of IOLs are the approximately five thousand ophthalmologists certified to implant IOLs; of these ophthalmologists, however, about ten percent of them, the so-called high volume implanters, perform sixty to seventy percent of all implantations. *Id.* at 672.

Surgidev was founded in 1976 by Myron Lippman, an electrical engineer who developed technologies for manufacturing IOLs. In 1979, Dennis Grendahl purchased eighty percent of Surgidev from Lippman, and those two along with Robert Fitzsimmons, an IOL sales and marketing veteran, combined to make Surgidev a dominant IOL manufacturer by 1982. *Id.* A chief reason for this success was that Surgidev was the first to produce haptics, the devices that connect the IOL lens to the human eye, made entirely of polymethylmethacrylate ("PMMA"). Lippman developed this process, known as the PMMA monofilament process. In October 1982, disagreements between Grendahl and Lippman forced Lippman to leave Surgidev. Before departing, Lippman and Surgidev entered an agreement, titled the "Deal Memo," in which Lippman transferred to Surgidev the PMMA monofilament process.

The individual defendants in this litigation were all at one time key employees of Surgidev's marketing and sales division. *Id.* at 672, 674. Between February and August of 1985, they all resigned from their positions at Surgidev, and, subsequently, joined the newly formed ETI, a competitor of Surgidev's in the IOL industry.

Surgidev brought this action alleging, among other things, that ETI misappropriated Surgidev trade secrets and tortiously interfered with Surgidev's contractual relations. Surgidev sought injunctive relief aimed in part at preventing ETI from engaging in business activities relating to these trade secrets and to Surgidev's contractual relations with Lippman. After a trial, the district court granted in part Surgidev's requested injunctive relief, which, most significantly for purposes of this appeal, prohibited ETI from soliciting any of Surgidev's customers that qualify as high volume implanters through December 31, 1987. *Id.* at 701. After the issuance of this order, ETI filed a motion for reconsideration, which was denied in all respects relevant to this appeal. *Id.* at 701–03.

ETI raises four issues on appeal: (1) whether the district court's factual findings supporting its conclusion that ETI misappropriated Surgidev trade secrets are clearly erroneous; (2) whether the length of the injunction is inequitable; (3) whether the district court erred in concluding that ETI unlawfully interfered with contractual relations between Surgidev and Lippman; and (4) whether the district court abused its discretion in refusing to modify the injunction based on ETI's acquisition of another IOL company.

## I.

ETI challenges the district court's factual findings supporting its conclusion that ETI misappropriated Surgidev trade secrets. In many instances, ETI unabashedly asks this court to evaluate the evidence before the district court and reject the district court's detailed factual findings. Accordingly, a brief discussion of our limited standard of review is appropriate. Pursuant to Fed.R.Civ.P. 52(a)'s clearly erroneous rule, a district court's factual findings may not be reversed unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct.

1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Appellate courts must defer to the factual findings of trial judges who, by virtue of their opportunity to hear and evaluate the witnesses and their expertise acquired over the course of many factfinding proceedings, are eminently more qualified to make factual findings. *Id.* at 574, 105 S.Ct. at 1512. The clearly erroneous rule saves judicial resources, *id.* at 574–75, 105 S.Ct. at 1512–13, and assures the parties that the trial is the principal factfinding proceeding, rather than just a "tryout on the road." *Id.* at 575, 105 S.Ct. at 1512 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977)).

Therefore, the clearly erroneous standard does not allow an appellate court to reverse a factual finding simply because it is convinced it would have decided the case differently. *Id.* at 573, 105 S.Ct. at 573. Moreover, "[w]here there are two permissible views of the evidence, the factfinder's choice between them *cannot* be clearly erroneous." *Id.* at 574, 105 S.Ct. at 1512 (emphasis added). Finally, in applying the standard, we must construe the evidence in the light most favorable to the party prevailing below, and the burden is on the objecting party to clearly demonstrate error in the factual findings. *Craft v. Metromedia, Inc.*, 766 F.2d 1205, 1212 (8th Cir.1985), *cert. denied*, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986).

[1, 2] ETI first disputes the district court's finding that Surgidev treated its customer information as confidential. *See* 648 F.Supp. at 692–94. Surgidev was required to take efforts "reasonable under the circumstances" to maintain the secrecy of its customer information. Uniform Trade Secrets Act ("UTSA") § 1(4)(ii), 14 U.L.A. 542 (1980).[2] In support of its finding that Surgidev treated this customer information as confidential, the district court found that Surgidev put its employees on notice by requiring employees to sign non-disclosure agreements, 648 F.Supp. at 693; Surgidev restricted vistor access to its sales and administrative headquarters, *id.*; Surgidev kept customer information documents in locked files, *id.* at 694; and Surgidev distributed customer information data only on a "need-to-know" basis, *id.* Notwithstanding these conclusions, ETI argues that the district court's confidentiality finding is clearly erroneous because Surgidev failed to warn departing employees who took jobs with other IOL companies of the secrecy of Surgidev's customer information. Even if this assertion were true, it does not render the district court's confidentiality finding clearly erroneous. Only reasonable efforts, not all conceivable efforts, are required to protect the confidentiality of putative trade secrets. *See* UTSA § 1(4)(ii) Commissioners' Comment, 14 U.L.A. at 543; *cf. Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 901–03 (Minn.1983) (inadequate efforts). Even if Surgidev failed to remind departing employees of the secrecy of its customer information, the actions the district court found it did take were sufficient to "signal[ ] to its employees and to others that certain information is secret and should not be disclosed." *Electro-Craft*, 332 N.W.2d at 902. We thus reject ETI's contention that the district court clearly erred in finding that Surgidev took reasonable efforts to protect the secrecy of its customer information.[3]

■ ETI next contests the district court's finding that the identity of Surgidev's high volume implanters is not gener-

---

2. The trade secrets issues in this appeal are governed by Minnesota and California law. *See* 648 F.Supp. at 679–80. Both Minnesota and California have adopted the Uniform Trade Secrets Act. *See* Minn.Stat. §§ 325C.01–.08 (1984); Cal.Civ.Code §§ 3426.1–.10 (Deering 1987).

3. Similarly, we reject ETI's argument that Surgidev has waived its right to assert or is estopped from arguing that its customer information was confidential. In contrast to its failure to attempt to enforce the non-competition clause of its employee agreements, *see* 648 F.Supp. at 697–98, Surgidev engaged in a continuing course of conduct aimed at protecting the secrecy of customer information, and by no means did it intentionally relinquish its statutory and contractual right to protection against misappropriation of trade secrets.

ally known or readily accessible to others. *See* 648 F.Supp. at 682–84. The district court premised its finding primarily on the testimony of three witnesses, each an employee of a Surgidev competitor. In sum, they testified that the identity of an IOL company's high volume implanters is considered confidential and that they did not know the identity of Surgidev's high volume implanters. *See id.* at 682. ETI now attacks the credibility of these witnesses and points to alleged inconsistencies in their statements. Accordingly, ETI contends that we should disregard this testimony in favor of the testimony of their expert witness, who stated that while he was an executive at two IOL companies those companies were able to learn the identity of Surgidev's customers. Factual findings based on the credibility of witnesses can "virtually never" be clear error. *See, e.g., Craft v. Metromedia, Inc.,* 766 F.2d at 1212. The district court was in the best position to assess the arguably contradictory testimony of both sides. After reviewing this evidence, we tend to agree with the district court's assessment, and we certainly are not left with a definite and firm conviction that the district court mistakenly found that the identity of Surgidev's high volume implanters is not generally known to others in the IOL industry.

Finally, ETI challenges the district court's findings that ETI intended to use the information concerning Surgidev's high volume implanters and that this information could provide ETI with a competitive advantage. The district court specifically detailed the evidence it relied on to find that "defendants have solicited Surgidev's high volume implanters and intend to do so in the future." *See* 648 F.Supp. at 684–85, 695. ETI argues that this evidence is capable of a different interpretation, one which indicates that ETI did not use its knowledge of Surgidev's high volume implanters for ETI sales purposes. Even if we accepted this contention, we still could not conclude that the district court's findings were clearly erroneous, for "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Bessemer City,* 470

U.S. at 574, 105 S.Ct. at 1512. ETI also urges that "[i]n sharp contrast to Surgidev's weak circumstantial evidence * * * stands defendants' sworn testimony that none of them has ever used any information they believe to be a trade secret of Surgidev." Appellants' brief at 35. While self-serving denials are generally an inappropriate basis on which to premise a clearly erroneous finding, *e.g., WSM, Inc. v. Hilton,* 724 F.2d 1320, 1328 (8th Cir.1984), the sworn testimony relied on by ETI is especially unconvincing since the defendants have asserted throughout this litigation that they do not believe the identity of Surgidev's high volume implanters is a trade secret. We thus hold that the district court did not clearly err in finding that ETI intended to use the information regarding Surgidev's high volume implanters.

We likewise reject ETI's argument that the court erred in finding that the identity of Surgidev's high volume implanters would provide a competitor with a competitive advantage. The district court reasoned that "[t]he fact that defendants have exhibited an intention to use this information, as discussed above, is circumstantial proof of its value." 648 F.Supp. at 692. This inference was proper under Minnesota Law. *See, e.g., Cherne Indus., Inc. v. Grounds & Assocs.,* 278 N.W.2d 81, 90 (Minn.1979).

## II.

The district court enjoined ETI from, among other activities, soliciting Surgidev's high volume implanters through December 31, 1987. ETI argues that the length of this injunction is inequitable. In determining this length, the district court appropriately considered "the period of time that would be required for independent development of the protected information." 648 F.Supp. at 696; *cf.* UTSA § 2 Commissioners' Comment, 14 U.L.A. at 544 (injunction should terminate when former trade secret becomes known or generally knowable to good faith competitors). To upset the district court's conclusion that "fifteen months is a reasonable approximation * * as to how long a diligent salesperson in the

industry would require to develop the protected customer information," 648 F.Supp. at 696, we must find that the district court abused its discretion in fashioning this equitable remedy. *E.g., Lemon v. Kurtzman,* 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973).

■ ETI first contends that the injunction is inequitable because Surgidev allowed other employees to leave Surgidev and work for another IOL company "when their new positions would inherently require disclosure or use of Surgidev's confidential information." Appellants' brief at 37. This contention has no factual basis. The district court did find that Surgidev failed to attempt to enforce its invalid noncompetition agreements, but nothing in the record suggests that Surgidev acquiesced to use by past employees of its trade secrets or that any of these employees unlawfully misappropriated Surgidev trade secrets. ETI also contends that it was subject to a de facto injunction from June 1985 until March 1986 because during that "lead time" it failed to make use of Surgidev's trade secrets. This argument contravenes the district court's finding, affirmed here, that ETI used information regarding Surgidev's high volume implanters to its advantage during that period. *See* 648 F.Supp. at 684–85, 695. Moreover, even if ETI had not used the confidential information during that period, the length of the injunction would still be warranted under Minnesota law "to ensure that plaintiff was reasonably protected against further injury from the wrongful taking and that defendants were not unjustly enriched by their prior misconduct." *Cherne Indus., Inc. v. Grounds & Assocs.,* 278 N.W.2d at 93. The district court did not abuse its discretion in enjoining ETI from soliciting Surgidev's high volume implanters through December 31, 1987.

### III.

ETI next contests the district court's tortious interference holding. Pursuant to the previously discussed "Deal Memo," Lippman sold to Surgidev the PMMA monofilament process. In August 1985, ETI and Lippman entered into a consulting agreement, which, the district court concluded, constituted tortious interference with Surgidev's contractual relations with Lippman. 648 F.Supp. at 700. Accordingly, the district court enjoined ETI from engaging in activities with Lippman relating to the PMMA monofilament process. *Id.* at 701. This injunction expired on April 7, 1987. ETI concedes that it is not questioning the propriety of this injunction; that issue is moot. Instead, ETI contests the tortious interference finding that prompted the injunction because it is "relevant to further proceedings in the District Court regarding damages." Appellants' brief at 45. Surgidev urges that this court is without jurisdiction to consider this issue.

■ Our jurisdiction in this appeal flows solely from 28 U.S.C. § 1292(a)(1), which authorizes, in part, appeals from interlocutory orders granting injunctions or refusing to dissolve or modify injunctions. Because section 1292(a)(1) represents a departure from the general federal policy against piecemeal review, it must be construed strictly. *E.g., Switzerland Cheese Ass'n v. E. Horne's Market, Inc.,* 385 U.S. 23, 24, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966). The rule "spring[s] from a developing need to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955); *see also Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981). ETI's right to appeal from the district court's order "only goes to the injunction itself, and [ETI] cannot force consideration of the merits of the underlying case except as necessary to review the injunction." *Gould v. Control Laser Corp.,* 650 F.2d 617, 621 n. 7 (5th Cir.1981). This is not a situation where the asserted tortious interference issue is "interdependent with" or "a part of" a disputed injunction or issues concerning that injunction. *See In re Federal Skywalk Cases,* 680 F.2d 1175, 1180 (8th Cir.), *cert. denied,* 459 U.S. 988, 103 S.Ct. 342, 74

L.Ed.2d 383 (1982); *Helzberg's Diamond Shops, Inc. v. Valley West Des Moines Shopping Center, Inc.*, 564 F.2d 816, 818 (8th Cir.1977). To the contrary, the tortious interference issue has absolutely no bearing on any other issue in this appeal, let alone any "interlocutory orders of serious, perhaps irreparable, consequence." *Baltimore Contractors*, 348 U.S. at 181, 75 S.Ct. at 252. It makes little difference that the issue may affect a later proceeding. If it does—and we have no assurance that it will—and if ETI loses, ETI can then appeal from a final decision and obtain full review of the issue. Until then, we decline to address this state law question that has no relevance to the injunctive orders being challenged in this appeal.

## IV.

ETI's final argument is that the district court abused its discretion in refusing to modify the injunction by deleting from the injunction's list of prohibited physicians thirty-seven physicians who had a pre-existing business relationship with Americal, an IOL company that ETI acquired on October 9, 1986. Ten days after the district court issued its October 10, 1986 order, ETI filed a motion contending that in light of the Americal acquisition "it [was] no longer equitable that the judgment should have prospective application," Fed.R.Civ.P. 60(b)(5), and other reasons justified relief from the operation of the judgment, *id.* 60(b)(6). A court should exercise its power to modify an injunction only if the moving party establishes, among other things, "nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions," and satisfies the court that "the changes are so important that dangers, once substantial, have become attenuated to a shadow." *Humble Oil & Ref. Co. v. American Oil Co.*, 405 F.2d 803, 813 (8th Cir.) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 119–20, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932)), *cert. denied,* 395 U.S. 905 (1969).

■ The district court rejected ETI's motion for two reasons. First, it was "doubtful" that ETI could not have presented in a June 30, 1986 evidentiary hearing evidence of the thirty-seven physicians that had a relationship with Americal. 648 F.Supp, at 703. On May 19, 1986, ETI and Americal signed a letter expressing their mutual intent to combine their businesses. ETI cannot justifiably explain why, at that point, it did not obtain from Americal the names of the thirty-seven physicians and present them to the district court along with the preliminary agreement between ETI and Americal to combine their businesses. We thus agree that the allegations contained in ETI's post-order motion did not establish "a clear showing of grievous wrong evoked by new and unforeseen conditions." *Humble Oil*, 405 F.2d at 813.

The district court also denied ETI's motion because it saw "no compelling reason why it should amend the list of prohibited physicians." 648 F.Supp. at 703. The thirty-seven physicians constitute a small part of the total population of ophtalmologists that implant IOLs; ETI is still free to solicit the vast majority of these ophthalmologists. And regardless of Americal's relationship with these thirty-seven physicians, ETI still retains the trade secret information regarding Surgidev's relationship with these physicians, which, if ETI were allowed to immediately solicit these physicians, could be unlawfully used to ETI's competitive advantage. It is thus apparent that the mere fact that ETI acquired Americal, which had a business relationship with these physicians, was not "so important that dangers [which prompted the injunction], once substantial, [had] become attenuated to a shadow." *Humble Oil*, 405 F.2d at 813. The district court did not abuse its discretion in refusing to modify the injunction in this respect.

The orders of the district court are affirmed.