Donald D. GRONHOLZ, Appellant,

v.

SEARS, ROEBUCK AND CO., a New York corporation, Appellee.

No. 88–5004.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 18, 1988.

Decided March 6, 1989.

Richard O. Bartz, Minneapolis, Minn., for appellant.

P. Phillips Connor, Chicago, Ill., for appellee.

Before HEANEY * and FAGG, Circuit Judges, and LARSON,** Senior District Judge.

HEANEY, Senior Circuit Judge.

Donald Gronholz appeals the decision of the district court to dismiss his claim of unfair competition and to grant summary judgment in favor of Sears, Roebuck and Co. (Sears). We reverse.

BACKGROUND

In 1972, Gronholz began to design a router guide, a tool designed to control a router for making linear, circular and curved cuts in wood and plastic. Although several guides were already on the market, Gronholz felt that his unique design was an improvement over other available guides. In 1975, he completed and tested the first prototype, finished drawings of the guide and prepared a written description of it. In November of 1975, he and an associate, Ronald Dove, met with Robert Steck, a purchasing agent for Sears at the company's Chicago, Illinois office in order to interest Sears in developing and marketing his guide. Steck, who expressed interest,

* The Honorable Gerald W. Heaney, assumed senior status on December 31, 1988.

** The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, sitting by designation.

was given two prototype models, a description of the product and operating instructions to allow Sears to conduct tests. Gronholz agreed to allow Steck to submit the protoypes to Singer, Co., a Sears supplier, for review, but heard nothing from either company about his invention.

On August 30, 1977, a patent was issued to Gronholz for his router guide. In 1978, Sears placed on the market a router guide identified as the "Sears Multi–Purpose Router Guide No. 25179." On July 12, 1985, Gronholz filed a complaint in federal district court alleging patent infringement and unfair competition. More specifically, Gronholz alleges that Sears breached an agreement to pay him for the use of his invention, breached a confidential relationship and misappropriated a trade secret. The district court granted summary judgment in favor of Sears on the unfair competition claim, holding that Gronholz had failed to maintain the secrecy of his invention. Because several questions of material fact exist with regard to the circumstances surrounding Gronholz' disclosure to Sears, we believe summary judgment was inappropriate.

DISCUSSION

Summary judgment is warranted whenever "the pleadings, depositions, answers to interrogatories, and admissions * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. Summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In the present case, we must examine the record before the trial court to determine whether Gronholz produced sufficient evidence to create a question of fact with regard to his claim of unfair competition. We believe he did.

■ Gronholz filed an affidavit with the district court in which he stated that he had met with Robert Steck on November 7, 1975. During this meeting, Steck allegedly agreed to test the router guide, to evaluate Sears' interest in purchasing the tool from Gronholz and to maintain the confidentiality of the relationship. Gronholz specifically alleged:

The discussion with Mr. Steck concerned my router guide and its operation. Mr. Steck estimated that Sears annual sales of routers was between 40,000 to 100,000. Mr. Steck was told of the desire to sell router guides to Sears. He proposed alternatives such as giving Sears an exclusive arrangement on the router guide for some period of time. Mr. Steck questioned if we would be reluctant if he showed the guide to other parties. *It was agreed that this could be done if it was shown in confidence.* I, nor anyone on my behalf, made a written or verbal non-confidential agreement with Sears concerning my router guide. The agreement with Mr. Steck on behalf of Sears was that Sears would evaluate my router guide to see if Sears was interested in adding the router guide to their hand tool products. In the event that Sears would market the router guide then an arrangement would be made to compensate me for my router guide property. Sears was not given any rights to make, use, or sell my router guide other than conduct lab tests with the prototype guides that I provided them and evaluate the router guide. I trusted Sears to make a fair test and evaluation of my router guide. I also trusted and relied on Sears to refrain from marketing my router guide without compensating me.

Gronholz Affidavit at 7 (emphasis added).

Although an affidavit of Robert Steck exists in the record, he mentions nothing about a visit from Gronholz in 1975. He apparently only recalls one meeting prior to 1978 with Michael Tierney, a business associate of Gronholz. Steck stated:

During the period when I was Assistant Buyer for power tools and accessories (before February 16, 1978), I had one meeting with a representative of plaintiff Donald D. Gronholz, and my recollection is that his name was Michael Tierney. The meeting was in response to a request of Gronholz's representative to meet with me. This meeting was not initiated by me, nor did I know what would be discussed at the meeting until it occurred.

At the meeting, I was shown a model of a router guide and was told that such a model was patented, and available as a product if Sears should wish to purchase the same for retail distribution to its customers.

I informed such representatives that The Singer Company was a major supplier of power tools and accessories to Sears, and I suggested that the model be sent to Singer for its evaluation and comment. Gronholz's representative agreed with this suggestion, and left the model with me when the conference ended. Shortly thereafter, I caused the model to be sent to Singer for its evaluation and comment.

During the meeting I was told that the model was "patented," and I understood that the product was being offered to Sears as a commercially available product. *I was not requested to treat information concerning the product as confidential. At no time during the meeting did I make any written or oral agreement to maintain any information received from Gronholz's representative in confidence.* On the contrary, my suggestion that Singer be consulted with respect to the model, and the assent thereto of Gronholz's representative, shows the contrary. At no time did I suggest or agree that any restrictions be placed on Singer's use of the model or information derived therefrom.

Steck Affidavit at 1–2.

 It is fairly clear to this Court that Sears and Gronholz dispute basic facts that are essential to the unfair competition and contract claim. The district court found that no confidential relationship existed between Sears and Gronholz because Gronholz allowed Sears to disclose the invention to Singer. Gronholz argues that he merely authorized a confidential disclosure of the tool for the purpose of testing and evaluation. Mere disclosure of information does not negate the existence of a confidential relationship. "Where facts demonstrate that a disclosure was made in order to promote a specific relationship, e.g., disclosure to a prospective purchaser to enable him to appraise the value of the secret, the parties will be bound to receive the information in confidence." *Burten v. Milton Bradley Co.,* 763 F.2d 461, 463 (1st Cir. 1985). Thus, a confidential relationship may arise by operation of law. A determination as to Gronholz' breach of confidentiality claim depends on whether he placed such a limitation on the use of the router guide. The district court did not address this factual issue.

 A closely related issue is Gronholz' claim that Sears misappropriated a trade secret. Under Minn.Stat. § 325C.01, subd. 5, a trade secret is defined as information that derives independent economic value from not being readily ascertainable and is the subject of efforts "that are reasonable under the circumstances to maintain its secrecy." The issue of whether a plaintiff took reasonable steps under the circumstances to maintain the secrecy of information is an issue of fact. *Surgidev Corp. v. Eye Technology, Inc.,* 828 F.2d 452, 455 (8th Cir.1987). The district court found that Gronholz' voluntary disclosure to Singer indicated a failure to maintain a trade secret. Unresolved, however, is the underlying factual issue of whether this disclosure was of a limited nature, and if so, whether that limitation was "reasonable" under Minn.Stat. § 325C.01.

 The final claim, that Sears agreed to pay Gronholz for the use of his invention, is denied by Sears. Gronholz' claim is supported by his affidavit in which he described the terms of this agreement. This affidavit suffices to create an issue of fact and there is insufficient evidence at this time to find for Sears. As the existence of an agreement constitutes a factual ques-

**394**

tion, summary judgment on the contract claim would be inappropriate.

## CONCLUSION

Because questions of material fact exist as to whether Sears agreed to maintain the confidentiality of Gronholz' router guide, whether Gronholz took reasonable steps to preserve the secrecy of his invention, and whether Sears agreed to compensate Gronholz for the use of his invention, we reverse the district court's summary judgment and remand for proceedings consistent with this opinion.