**ALL WEST PET SUPPLY COMPANY,**
a/k/a West Denver Feed Company,
Plaintiff,

v.

**HILL'S PET PRODUCTS DIVISION, COLGATE–PALMOLIVE COMPANY,** and Veterinary Companies of America, Inc., Defendants.

**HILL'S PET PRODUCTS DIVISION, COLGATE–PALMOLIVE COMPANY,** Counterclaim Plaintiff,

v.

**ALL WEST PET SUPPLY COMPANY,** Counterclaim Defendant.

Civ. A. No. 92–1174–DES.

United States District Court, D. Kansas.

Dec. 29, 1993.

Ronald D. Heck, Heck & Sheppeard, P.A., Topeka, KS, Paul J. Hanley and Phyllis M. Ain, Durham & Baron, P.C., Denver, CO, for All West Pet Supply Co. aka West Denver Feed Co.

Steven K. Morse, Hill's Pet Nutrition, Inc., Topeka, KS and Jeffrey F. Reiman, Reiman & Associates, P.C., Denver, CO, for Hill's Pet Products Div., Colgate–Palmolive Co. and Veterinary Companies of America, Inc.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the motion of Hill's Pet Products Division, Colgate–Palmolive Company ("Hill's"); and Veterinary Companies of America, Inc. ("VCA") (hereinafter "the defendants") for summary judgment on each of the five claims asserted by All West Pet Supply Company ("All West"), and the motion of counterclaim plaintiff Hill's for summary judgment against All West on its first and second counterclaims (Doc. 81).

### Nature of the Case

All West brings this diversity suit against Hill's and VCA, both of which are divisions of Colgate–Palmolive Company. All West, a former Hill's distributor, alleges that Hill's breached a provision of its distributorship agreement that required Hill's to maintain the confidentiality of certain customer information provided by All West to Hill's on a periodic basis pursuant to the agreement. All West also alleges that the defendants' use of the information amounts to a violation of the Kansas Uniform Trade Secrets Act.[1]

Hill's has filed a counterclaim against All West for the amount due Hill's for pet food products sold and delivered to All West.[2] All West has stipulated that it failed to pay Hill's for these products.[3]

---

1. Count 1 of the complaint alleges that Hill's breached the distributorship agreement. Counts 2 and 3 allege that each defendant's use of the information in question amounts to misappropriation of a trade secret under K.S.A. 60–3320 et seq. In Counts 4 and 5, All West claims exemplary damages and attorney's fees from each of the defendants under K.S.A.1992 Supp. 60–3322(b) and K.S.A. 60–3323(iii), alleging that their misappropriation of All West's trade secret was willful and malicious.

2. The first counterclaim alleges a common law breach of the distributorship agreement by virtue of All West's failure to pay for the products. The second counterclaim alleges that All West is liable for the price of the products under § 4–2–709(1)(a) of the Colorado Revised Statutes and § 84–2–709(1)(a) of the Kansas Statutes Annotated. Hill's seeks compensatory damages as the remedy for both counterclaims.

3. Hill's also filed a counterclaim for fraud against All West and Michael J. Bernstone, All West's senior executive officer and owner of All

By stipulation of the parties, Kansas law governs the legal issues in this litigation.

### Jurisdiction and Venue

The court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), (c)(1). Venue is proper in this district under 28 U.S.C. § 1391(a)(1)–(3), (c). There are no disputes between the parties as to either jurisdiction or venue.

### Summary Judgment Standards

 Under Fed.R.Civ.P. 56, the court is compelled to render summary judgment on behalf of a moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–2512, 91 L.Ed.2d 202 (1986). An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In opposing a properly supported motion for summary judgment, a party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party must go beyond the pleadings and designate specific facts, by affidavits, depositions, answers to interrogatories, and admissions on file, showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). However, a mere scintilla of evidence in favor of the nonmoving party is insufficient to create a genuine issue of material fact. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

### Facts

For purposes of resolving the defendants' motion for summary judgment, the court makes the following findings of fact.

Hill's is a manufacturer of specialty pet food products. All West was a nonexclusive distributor of Hill's products in a defined geographic area in the Rocky Mountain region. All West's distributorship with Hill's was memorialized in a series of annually renewable written agreements, the most recent of which was for a one-year term ending March 31, 1992.[4]

---

West's parent corporation, alleging that Bernstone intentionally ordered pet food products without intending to pay for them in the event that Hill's elected not to renew All West's distributorship agreement beyond March 1992. All West and Bernstone were granted summary judgment on this counterclaim in a memorandum and order filed by this court on December 21, 1993.

**4.** The agreement included the following provision dealing with its term:

3.1 This Agreement shall be effective from April 1, 1990, until March 31, 1991, and shall be renewed automatically from year to year thereafter, unless either Party gives the other Party notice of its intent (1) not to renew this Agreement or (2) to modify this agreement.

Pursuant to the distributorship agreement, All West provided certain information to Hill's regarding All West's retail accounts and other customers, including not only names and addresses, but also the specific purchases made by each customer of Hill's pet products. The information submitted to Hill's was integrated into its Retail Sales Management System, a computer database of information used for marketing purposes. Under the terms of the agreement describing the obligations of Hill's, "[r]etail sales agreement describing the obligations of Hill's, "[r]etail sales management system information provided to Hill's ... shall be held in strictest confidence and shall not be discussed with, or provided to, any other distributor regardless of their relationship to Hill's."

All West contends that Hill's misused customer information provided by All West, both before and after the distributorship agreement expired. All West did not lose any sales as a result of Hill's alleged misuse of such information in 1990. Hill's contends that the names and addresses of All West's customers were readily ascertainable through commercially and publicly available information and that All West did not maintain its customer information in secrecy.

By letter dated February 28, 1992, Hill's informed All West of its intent not to renew the distributorship agreement after its expiration on March 31, 1992. At the time the agreement expired, All West had purchased and received a substantial amount of Hill's products on open account, for which payment had not been made. All West admits that it has not paid Hill's $516,517.09 for these products.

### Discussion

1. *Trade Secret.* Hill's first argues that the information All West provided under the distributorship agreement does not amount to a trade secret as a matter of law, primarily because All West cannot satisfy the requirement that reasonable efforts were made to maintain the secrecy of the information. If the information does not constitute a trade secret as a matter of law, All West cannot prevail on its claims that the defendants misappropriated a trade secret, whether or not the defendants actually misused the information in question.

Kansas has adopted the Uniform Trade Secrets Act. *See* K.S.A. 60–3320 *et seq.* It defines "trade secret" as follows:

(4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

 In an action claiming unauthorized use of a trade secret, the threshold inquiry is whether or not there was a trade secret to be misappropriated. *Koch Engineering Co., Inc. v. Faulconer,* 227 Kan. 813, 610 P.2d 1094, 1104 (1980). The existence of a trade secret under the Uniform Trade Secrets Act is a question of fact for determination by the trier of fact. *See Network Telecommunications, Inc. v. Boor–Crepeau,* 790 P.2d 901, 902 (Colo.App.1990); *see also Defiance Button Machine Co. v. C & C Metal Products Corp.,* 759 F.2d 1053, 1063 (2d Cir.) (secrecy is a basic element of the factual inquiry) (quoting 1 R. Milgram, *Milgram on Trade Secrets* § 2.03, at 2–32 to 2–33 (1984)), *cert. denied,* 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); *Kodekey Electronics, Inc. v. Mechanex Corp.,* 486 F.2d 449, 454 n. 4, 455 (10th Cir.1973) (what constitutes a trade secret is a question of fact for the court) (quoting Callman, *Unfair Competition, Trademarks and Monopolies* § 53.3, at

3.2 Any notice given pursuant to Section 3.1 shall be in writing, and shall be delivered to the other Party by depositing in the United States mail or similar mail delivery service to the Party addressed at the address provided in

Section 14.3 at least thirty (30) days prior to the expiration of this Agreement or any yearly extension of renewal hereof.
The agreement was automatically renewed for the period April 1, 1991 through March 31, 1992.

390 (3d ed. Supp.1973)); *Public Systems, Inc. v. Towry*, 587 So.2d 969, 972 (Ala.1991) (same). *But cf. B.C. Ziegler and Co. v. Ehren*, 141 Wis.2d 19, 414 N.W.2d 48, 51 (1987) (whether trade secret exists under common law is a mixed question of fact and law).

■ Customer lists and other customer information may constitute a trade secret. *E.g., Zoecon Industries v. American Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983); *Defiance Button Machine Co.*, 759 F.2d at 1063; *Koch Engineering*, 610 P.2d at 1107; *B.C. Ziegler and Co. v. Ehren*, 414 N.W.2d at 52; *cf. Gillis Associated Industries, Inc. v. Cari–All, Inc.*, 206 Ill.App.3d 184, 151 Ill.Dec. 426, 430, 564 N.E.2d 881, 885 (1990) (Illinois Trade Secrets Act expressly covers customer lists), *appeal denied*, 137 Ill.2d 664, 156 Ill.Dec. 560, 571 N.E.2d 147 (1991). Whether customer information is generally known or readily ascertainable is a question of fact. *Zoecon Industries*, 713 F.2d at 1179; *see A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 89 (2d Cir.1991); *Surgidev Corp. v. Eye Technology, Inc.*, 828 F.2d 452, 455 (8th Cir.1987); *cf. Mann v. Tatge Chemical Co.*, 201 Kan. 326, 440 P.2d 640, 647 (1968) (trial court's finding that plaintiff's alleged trade secret was not known to the public or to the industry was a finding of fact, although improperly labelled a conclusion of law). Similarly, whether the possessor of such information has taken reasonable steps to protect its secrecy is also a question of fact. *See A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d at 89; *Defiance Button*, 759 F.2d at 1063.

■ The court concludes that the evidence submitted by the parties is sufficient to create a genuine issue of fact as to whether All West took reasonable steps to maintain the secrecy of the customer information submitted to Hill's for integration into the Retail Sales Management System. As the plaintiff points out, the information at issue is not limited to the names and addresses of All West customers, as Hill's apparently argues. Rather, the dispute concerns detailed information concerning All West's customers, including their purchasing patterns, sales volumes, and payment histories. A plaintiff alleging misappropriation of a trade secret need not prove that every element of information in a compilation is unavailable elsewhere. *Boeing Co. v. Sierracin Corp.*, 108 Wash.2d 38, 738 P.2d 665, 675 (1987). Trade secrets often contain elements that by themselves may be in the public domain, but together nevertheless qualify as trade secrets. *Id.* (citing *Servo Corp. of America v. General Elec. Co.*, 393 F.2d 551 (4th Cir. 1968)).

■ Further, only reasonable efforts are required to protect the secrecy of putative trade secrets, not all conceivable efforts. *Surgidev Corp. v. Eye Technology*, 828 F.2d at 455 (citing UTSA § 1(4)(ii) Commissioners' Comment, 14 U.L.A. at 543); *Colorado Supply Co., Inc. v. Stewart*, 797 P.2d 1303, 1306 (Colo.App.1990) (extreme and unduly expensive procedures need not be taken to maintain secrecy). Whether the detailed customer information provided by All West to Hill's under the terms of the distributorship agreement amounts to a trade secret under the facts and circumstances of this case is a question of fact for the jury, precluding summary judgment.

■ 2. *Confidentiality Provision of Distributorship Agreement.* Hill's next argues that All West cannot prevail on its claim that Hill's breached the distributorship agreement by misusing the information after March 31, 1992, because the confidentiality obligations of that agreement did not extend beyond the date the agreement expired. In response, All West argues that the agreement is ambiguous with regard to whether the parties intended the confidentiality provision to extend beyond the expiration of the distributorship, and therefore parol evidence is admissible to ascertain the parties' intent.

■ The interpretation of an unambiguous contract is a judicial function. *Missouri Pacific R.R. Co. v. Kansas Gas and Elec. Co.*, 862 F.2d 796, 799 (10th Cir.1988) (applying Kansas law); *United States v. Ables*, 739 F.Supp. 1439, 1445 (D.Kan.1990); *Albers v. Nelson*, 248 Kan. 575, 809 P.2d 1194, 1197 (1991). If the language of the contract is ambiguous, however, evidence is admissible to determine the intent of the parties to the contract, which is an issue of

fact. *See Wood River Pipeline Co. v. Willbros Energy Services Co.,* 241 Kan. 580, 738 P.2d 866, 869 (1987) (quoting *Hall v. Mullen,* 234 Kan. 1031, 678 P.2d 169 (1984)). Whether or not the language of a contract is ambiguous is a question of law for the court to resolve. *Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114, 1120 (10th Cir.1991) (applying Kansas law), *cert. denied,* ― U.S. ―, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991); *Missouri Pacific R.R. Co.,* 862 F.2d at 799; *Christie v. K–Mart Corp.* 784 F.Supp. 796 (1992); *Simon v. National Farmers Organization, Inc.,* 250 Kan. 676, 829 P.2d 884, 888 (1992).

■ To be ambiguous, the contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from the natural and reasonable interpretation of its language. An ambiguity does not appear until application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more meanings is the proper meaning. *Simon v. National Farmers Organization,* 829 P.2d at 888; *Farm Bureau Mutual Ins. Co. v. Old Hickory Casualty Ins. Co.,* 248 Kan. 657, 810 P.2d 283, 285–86 (1991). A written contract is not ambiguous unless two or more meanings can be construed from the contract provisions themselves. *Albers v. Nelson,* 809 P.2d at 1197.

The court concludes that the language of the agreement in this case is not susceptible of two different meanings with regard to the duration of the parties' contract obligations, and therefore the agreement is not ambiguous. The term provision of the written agreement clearly states that it extends for one year ending March 31, 1991.[5] The parties agree that the contract automatically renewed for a one-year period ending March 31, 1992, and that Hill's gave timely notice to All West of its decision not to renew the contract past March 31, 1992. Therefore, the language of the agreement is clear with regard to the date of its termination: March 31, 1992. The confidentiality provision upon which All West relies was one of several contract obligations of Hill's specifically listed as such in the distributorship agreement. The confidentiality provision did not include any additional language that could reasonably be construed as meaning that the confidentiality obligation was to extend beyond the term of the distributorship agreement itself. Therefore, the court concludes that the agreement's language is not ambiguous as a matter of law.

■ In the absence of fraud or mutual mistake, a clear and unambiguous contract must be enforced according to its terms. *Fast v. Kahan,* 206 Kan. 682, 481 P.2d 958, 961 (1971); *see Augusta Medical Complex, Inc. v. Blue Cross of Kansas, Inc.,* 227 Kan. 469, 608 P.2d 890, 895 (1980) (in the absence of fraud, mistake, or duress, a competent party who enters into a contract is bound by its terms, including any provision for mutual termination of the contract). If the language of the written instrument is clear and can be carried out as written, there is no room for rules of construction. *Simon,* 829 P.2d at 888. The court will not write a new contract for the parties under the guise of interpretation in order to achieve some equitable result. *Morgan v. Mobil Oil Corp.,* 726 F.2d 1474, 1477 (10th Cir.1984) (applying Kansas law). Nor is the court at liberty to revise an agreement to implement an unexpressed intention. *See* 17A Am.Jur.2d § 340 (1991).

■ A contract that specifies the period of its duration generally terminates on the expiration of such period. *See Bartlett and Co., Grain v. Curry,* 1 Kan.App.2d 242, 563 P.2d 1096, 1101 (1977) (citation omitted). Under the terms of the contract at issue in this case, the mutual obligations of Hill's and All West, as the parties to the distributorship agreement, terminated effective March 31, 1992, the date the agreement expired. The contractual duty of Hill's to maintain the confidentiality of the customer information provided under the terms of the agreement therefore terminated as of that date.

■ The court's conclusion is consistent with the principle that Kansas contract law disfavors contractual rights and obligations between parties unbounded by definite limi-

---

**5.** *See supra* note 4.

tations of time. *See Augusta Medical Complex, Inc. v. Blue Cross of Kansas, Inc.,* 608 P.2d at 895 (citations omitted). The court therefore finds without merit All West's arguments that its principal, Michael Bernstone, understood the confidentiality obligation to continue in perpetuity.

The court concludes that Hill's is not contractually liable to All West for failing to maintain the confidentiality of All West's customer information after March 31, 1992. Hill's is therefore entitled to judgment as a matter of law with regard to All West's first claim alleging breach of the distributorship agreement, to the extent that All West's claim is based upon the defendants' use of All West's customer information after March 31, 1992, when the agreement expired.

■ *3. Damages Resulting from Alleged Misuse of Information Prior to Expiration of Distributorship Agreement.* Hill's next argues that All West cannot establish that it incurred damages as a result of the alleged misuse of confidential customer information during the life of the distributorship agreement. All West contends that the information was misappropriated by the defendants when they used the information to plan for the takeover of All West's territory by VCA. If All West cannot prove it was damaged by the alleged breach of the distributorship agreement, Hill's contends that All West's recovery is limited to nominal damages as a matter of law.

In response, All West simply contends that there are factual issues with regard to whether or not Hill's and VCA misused All West's customer information on a number of occasions prior to the expiration of the distributorship agreement. All West does not respond to the assertion by Hill's that there is no evidence establishing that All West was damaged as a result of any such misuse of information.

While there appear to be no cases on point applying Kansas law, a number of other jurisdictions have held that the mere breach of an agreement that causes no loss to the plaintiff will not sustain an action for damages. *See, e.g., Becker v. Celebration, Inc.,* 541 F.2d 156, 159 (6th Cir.1976) (applying Tennessee law); *Best Motor and Implement*

*Co., Inc. v. International Harvester Co.,* 252 F.2d 278, 286 (5th Cir.1958) (applying Louisiana law); *Pasquel v. Owen,* 186 F.2d 263, 271 (8th Cir.1950) (citing *Block v. City of West Palm Beach,* 112 F.2d 949, 951 (5th Cir.1940) (applying Florida law) (citing *Black on Rescission,* pp. 8, 81, 850)); *Scott–Steven Development Corp. v. Gables by the Sea, Inc.,* 167 So.2d 763, 764 (Fla.App.1964), *cert. denied,* 174 So.2d 32 (Fla.1965); *Bergkamp v. Martin,* 114 Idaho 650, 759 P.2d 941, 944 (Idaho Ct.App.1988) (citing 5A Corbin, Corbin on Contracts § 1003 (1964)); *Menzel v. Metrolina Anesthesia Associates, P.A.,* 66 N.C.App. 53, 310 S.E.2d 400, 404 (1984); *Hodges v. Gronvold,* 54 Wash.2d 478, 341 P.2d 857, 858 (1959). *But cf. Becker v. Central States Health and Life Co. of Omaha,* 431 N.W.2d 354, 357 (Iowa 1988) (no defense to action for breach of contract that promisee has not been damaged), *overruled on other grounds by Johnston Equipment Corp. v. Industrial Indem.,* 489 N.W.2d 13, 16 (Iowa 1992); *Chicago & N.W. Ry. Co. v. Kramme,* 244 Iowa 944, 59 N.W.2d 204, 207 (1953) (when obligation is one of indemnity, action will not lie unless some actual loss or damage has been suffered; but when obligation amounts to binding agreement to do or refrain from doing some definite thing which materially affects rights of parties, an action will presently lie for breach, and no damage need be shown); *Derby v. Westminster Found.,* 90 Ohio App. 31, 103 N.E.2d 10, 12 (1951) (breach of contract always creates a right of action even though breach does not cause substantial damages; in such a case plaintiff can recover nominal damages (citing Restatement on the Law of Contracts (First) § 328)).

The Restatement (Second) of Contracts states the rule as follows:

> If the breach caused no loss or if the amount of the loss is not proved under the rules stated in this Chapter, a small sum fixed without regard to the amount of loss will be awarded as nominal damages.

Restatement (Second) of Contracts § 346(2) (1979). Comment b reads in pertinent part:

> Although a breach of contract by a party against whom it is enforceable always

gives rise to a claim for damages, there are instances in which the breach causes no loss.... There are also instances in which loss is caused but recovery for that loss is precluded because it cannot be proved with reasonable certainty or because of one of the other limitations stated in this Chapter.... In all these instances the injured party will nevertheless get judgment for nominal damages, a small sum usually fixed by judicial practice in the jurisdiction in which the action is brought. Such a judgment may, in the discretion of the court, carry with it an award of court costs. Costs are generally awarded if a significant right was involved or if the claimant made a good faith effort to prove damages, but not if the maintenance of the action was frivolous or in bad faith.

In the opinion of this court, the better rule is stated in the Restatement (Second) of Contracts § 346(2), and the Kansas Supreme Court would most likely follow that rule if it were presented with the facts presently before this court.

All West has not specified any evidence in the record to establish its claim for damages as a result of the defendants' misuse of information during the term of the distributorship agreement. Consequently, even if All West can establish that Hill's breached the confidentiality provision of the agreement, Hill's is entitled to partial summary judgment on All West's claim for breach of contract. As-suming that All West establishes the necessary elements at trial, it may recover no more than nominal damages on its claim for breach of the distributorship agreement.

■ 4. *Counterclaim for All West's Debt for Products Delivered.* Hill's contends that it is entitled to summary judgment on its counterclaim for $516,517.09 for products sold and delivered to All West by Hill's on open account. All West admits it owes Hill's

this amount, but contends that under K.S.A. 84–2–717 [6] it is entitled to set off the amount of the debt against the damages All West claims from Hill's for breach of the confidentiality provision of the distributorship agreement, which also established the general terms of sale for pet food products purchased by All West from Hill's.

The court has already concluded as a matter of law that All West is not entitled to pursue its breach of contract claim for any alleged misuse of information after March 31, 1992. In addition, the court has determined that All West is entitled at most to nominal damages for its breach of contract claim based upon the alleged misuse of information prior to the expiration of the agreement. Consequently, even if All West prevails on its breach of contract claim, at most it will recover only nominal damages, certainly not enough to offset the amount of the admitted debt to Hill's.

Furthermore, the court agrees with the argument advanced by Hill's that All West cannot set off the admitted debt for products sold and delivered against damages for breach of the confidentiality provision of the distributorship agreement. While the agreement sets forth the general terms for purchases by All West from Hill's, it does not provide specific price, quantity, or credit terms. K.S.A. 84–2–717 permits the deduction of damages resulting from any breach of a contract *for the sale of goods* from any part of the price still due under the same sales contract. All West does not contend that Hill's breached the particular sales contract for the products in question. The court is therefore in agreement with Hill's that damages for the alleged breach of the confidentiality provision of the distributorship agreement may not be deducted from All West's admitted debt to Hill's on a separate contract for the sale of goods, even though the sale terms may have been generally governed by the distributorship agreement. *See C.R.*

---

**6.** K.S.A. 84–2–717 reads in its entirety as follows:

 **84–2–717. Deduction of damages from the price.** The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.

The official comment reads in part, "To bring this provision into application the breach involved must be of the same contract under which the price in question is claimed to have been earned."

**1442**

*Bard, Inc. v. Medical Electronics Corp.,* 529 F.Supp. 1382, 1387–88 (Mass.1982). The court therefore concludes that Hill's is entitled to summary judgment against All West for the amount of the admitted debt for products sold and delivered.

**IT IS BY THE COURT THEREFORE ORDERED** that the motion of the defendants for summary judgment (Doc. 81) on plaintiff's claims is granted in part and denied in part, in accordance with this memorandum decision.

**IT IS FURTHER ORDERED** that the motion of Hill's, the counterclaim plaintiff, for summary judgment on its first and second counterclaims against All West (Doc. 81) is hereby granted.

**IT IS FURTHER ORDERED** that the clerk shall enter judgment in favor of counterclaim plaintiff Hill's Pet Products Division, Colgate–Palmolive Company, and against counterclaim defendant All West Pet Supply Company, in the amount of $516,517.09.