The Honorable Don Steffes State Senator, 35th District State Capitol, Room 460-E Topeka, KS 66612
Dear Senator Steffes:
You have requested our legal opinion regarding the ownership of the old Rock Island Railroad depot located in the city of Abilene. The old depot building is presently in use as a museum and is located on private property operated as Old Abilene Town, a local tourist attraction. According to information provided to us by the director of the Eisenhower library, a local group is organizing an excursion railroad company and is interested in acquiring the building for use as a depot. However, the legal ownership of the building is uncertain.
According to the information provided by the director of the Eisenhower library, approximately five acres of land and the depot building were donated in October, 1959 to the Eisenhower presidential library commission, a state agency, by the Chicago, Rock Island and Pacific Railroad company. In 1960, after consulting with Attorney General John Anderson, the library commission executed a "storage contract" with a corporation known as Old Abilene Town Company, Inc. for a term of 25 years. Under the agreement, the company moved the building at its own expense to private property located nearby, which cleared the donated tract for use by the library commission. Title to the building remained with the commission under the agreement, along with the right to take possession upon expiration of the contract. The agreement permitted the Old Abilene Town Company to use the building for museum purposes, and required the company to provide an adequate foundation and keep the building in good repair. The commission benefited from the agreement by avoiding the cost it would otherwise have incurred to raze or move the building. Presently, the depot remains on private property, although Old Abilene Town Company is apparently no longer in existence.
The Eishenhower presidential library commission was established in 1955 as a state agency solely for the purpose of acquiring property and funds to construct a library in Abilene to house the presidential papers of Dwight D. Eisenhower. L. 1955, ch. 358. The act creating the commission expressed the legislature's intent that once constructed, the library would be operated and maintained by the national archives and records service of the United States. Id.
The commission was originally authorized to acquire fee simple title to specified real estate in the city of Abilene, together with all improvements thereon. L. 1955, ch. 358, sec. 2. Title to such real estate was to be acquired by the commission in the name of the state. Id. The 1955 legislature appropriated $50,000 to the commission to pay the costs of acquiring the real estate and improvements. Id. at sec. 5. In 1957, the legislature gave the commission complete charge of all real estate acquired as a site for the presidential library building, including the authority to rent the property to generate revenue. L. 1957, ch. 432, sec. 1.
The 1957 legislature also amended the law to provide that if the commission could not raise sufficient moneys to finance the cost of constructing and equipping the library, the governor was authorized to sell the library site to the Eisenhower Foundation, a private non-profit corporation that operates the Eisenhower museum on an adjoining site, and which is still in existence. L. 1955, ch. 358; L. 1957, ch. 432, sec. 1. Based upon the information provided by the director of the Eisenhower library, there is no evidence that the foundation ever received any of the commission's assets. We therefore assume that the real estate acquired by the commission was never conveyed to the private foundation.
In 1959, the legislature authorized the commission to acquire additional real estate and improvements "[f]or the purpose of enlarging the site for a library building . . . or for purposes related to said presidential library project. . . ." L. 1959, ch. 324, sec. 1. Title to such additional real estate was also to be taken in the name of the state. Id. The legislature amended the statute giving the commission complete charge of real property acquired as a library site to include responsibility for property acquired "for related purposes." Id. at sec. 2. We assume the library commission acquired the property that was donated by the railroad in October, 1959 under authority of the 1959 legislation.
In 1961, the legislature enacted a statute prospectively abolishing the commission and providing specifically for the disposition of the commission's property. L. 1961, ch. 393. The term "library property" was specifically defined as "all property, land, buildings and equipment other than money heretofore or hereafter acquired by the Eisenhower presidential library commission by deed, conveyance, contribution, gift, donation, bequest, reversion or in any manner whatsoever for presidential library or related purposes. . . ." (Emphasis added.) Id. at sec. 1(c). The old Rock Island depot building is clearly within the statutory definition of "library property."
Among other things, the 1961 legislation provided as follows for the transfer of "library property" to the United States:
 "Whenever from time to time the Eisenhower presidential library commission shall adopt a resolution recommending that all the library property then owned by the commission be conveyed to the United States for operation and maintenance as a presidential archival library (or as an addition to the property previously conveyed) and as part of the national archives system, pursuant to the provisions of section 507(f) of the federal property and administrative services act of 1949, as amended (44 U.S.C. § 397(f)), and requesting the governor to convey the same, the governor on behalf of the state of Kansas, shall execute a conveyance of the fee simple title to such library property free and clear of all liens and encumbrances to the United States for operation and maintenance as a presidential archival depository and as part of the national archives system, pursuant to the provisions of section 507(f) of the federal property and administrative services act of 1949, as amended (44 U.S.C. § 397(f)), by deed or other proper written instrument in form satisfactory to the attorney general of the United States. A copy of such deeds and written instruments shall be filed in the office of the secretary of state. . . . The Eisenhower presidential library commission shall procure and furnish, free of all expense to the United States, all abstracts, official certifications and evidences of title to the library property that the attorney general of the United States may deem necessary and require." L. 1961, ch. 393, sec. 2 (emphasis added).
While the legislation originally provided that the commission would be abolished effective February 1, 1963, the statute was twice amended to extend the date of its abolition to July 1, 1967. L. 1961, ch. 393, sec. 7; L. 1963, ch. 410; L. 1965, ch. 445. All of the statutes pertaining to the commission have long since been repealed. See K.S.A. 74-4601 et seq.
According to the information provided to us, the records of the Eisenhower library, the Kansas state archives, and the secretary of state have been searched without success for information relevant to the conveyance of property owned by the library commission. The federal agency known as the national archives and
records administration has been contacted by the director of the Eisenhower library, but apparently has not searched its records for such information. Whether such property was actually conveyed by the state to the federal government is an issue of fact, which we do not reach in this opinion. See K.S.A. 75-704. We nevertheless address the legal issue of the building's ownership on the assumption that the library property was in fact conveyed as authorized by the statute.
We have been informed that the Eisenhower library, presently operated by the national archives and records administration, received the assets of the state commission. If so, the library property must have been conveyed by the governor on behalf of the state pursuant to L. 1961, ch. 393. We assume that the conveyance complied with the statutory requirement by transferring "fee simple title to such library property free and clear of all liens and encumbrances to the United
States. . . ." We also assume that the federal government accepted the conveyance pursuant to section 507(f) of the federal property and administrative services act of 1949, as amended. Since repealed, the federal statute then read in pertinent part as follows:
 "(f) The Administrator is authorized, whenever he deems it to be in the public interest —
 "(1) to accept, for and in the name of the United States, any land, buildings, and equipment offered as a gift to the United States for the purposes of creating a Presidential archival depository, and to take title to such land, buildings, and equipment on behalf of the United States, and to maintain, operate, and protect them as a Presidential archival depository, and as part of the national archives system;
 . . . Provided, That the Administrator shall submit a report in writing on any such proposed Presidential archival depository to the President of the Senate and the Speaker of the House of Representatives, which report shall include a description of the land, buildings, and equipment offered as a gift . . . : Provided further, That the Administrator shall not take title to any such land, buildings, and equipment . . . until the expiration of the first period of sixty calendar days of continuous session of the Congress following the date on which such report is transmitted . . .
 "(7) to accept gifts or bequests of money or other property for the purpose of maintaining, operating, protecting, or improving any Presidential archival depository. . . ." 44 U.S.C. § 397(f) (1964), 69 Stat. 695, ch. 859 sec. 2 (1955) (repealed) (emphasis added).
We note that the state's title to the old depot building was subject to a possessory interest conveyed under the storage contract to the Old Abilene Town Company, Inc. For the following reasons, however, we do not believe the company's contractual right to use the building as a museum precluded the state from transferring title to the federal government.
We agree with your conclusion that the depot building is properly characterized as personal property under these facts. The terms of the contractual agreement demonstrate no intention by the parties that the building would become part of the real estate occupied by Old Abilene Town company; indeed, the fact that the commission retained title to the building and the right to take possession upon expiration of the contract is evidence of the parties' intent that the building was to remain personal property upon its removal from the land donated by the railroad. SeeCentral Bank Railroad Co. v. Fritz, 20 Kan. 430, 438 (1876) (building became personal property when removed from plaintiff's land, and did not become real estate when moved to defendant's land and placed upon stone foundation).
In our opinion, the storage contract executed in 1960 created a bailment for mutual benefit. See Global Tank Trailer Sales v.Textilana-Nease, Inc., 209 Kan. 314, 316 (1972) (bailment for mutual benefit arises when both parties receive benefit from the transaction). Under Kansas law, a bailment is created upon delivery of personal property by one person to another for a particular purpose, with the express or implied agreement that when the purpose has been fulfilled the property will be returned to the bailor, or dealt with as the bailor requests. M. Bruenger Co. v. Dodge City Truck Stop, Inc., 234 Kan. 682, 685 (1984). When the transaction is a bailment, title is not transferred.Kansas Flour Mills Co. v. Board of Co. Comm'rs, 124 Kan. 312, 313
(1927). Consequently, the company's contractual right to use the building as a museum, after removing it from land owned by library, does not amount to a lien or encumbrance of the sort that would have precluded transfer of title to the United States. See
8 Am.Jur.2d Bailments sec. 96, p. 828-29 (1980) (bailor may sell subject matter of bailment and thereby confer immediate and valid title on purchaser).
Nor are we aware of any facts indicating that the corporation made improvements to the building with the commission's consent so as to create a personal property lien prior to the date the library property was conveyed by the governor. See L. 1961, ch. 264, sec. 1. Therefore, absent evidence that the governor's conveyance of library property expressly excluded the old Rock Island Railroad depot, or evidence that the federal government declined the state's conveyance of the depot building, we assume that the state's title to the old depot was conveyed to the United States along with all other library property.
As the commission's successor in interest, the United States not only took title to the building, but also the right to take possession of the building upon expiration of the storage contract. Under Kansas law, a contract that specifies the period of its duration generally terminates on the expiration of such period. Bartlett Co., Grain v. Curry, 1 Kan. App. 2d 242, 247
(1977); All West Pet Supply Co. v. Hill's Pet Products Div.,Colgate-Palmolive Co., 840 F. Supp. 1433, 1439 (D.Kan. 1993). The storage contract therefore expired by its terms in 1985, and since that time the United States, as successor in interest to the state library commission, has had the right to take possession of the old depot building. We do not address whether Old Abilene Town Company, Inc. or its successor retains any interest in the building by virtue of the fact that the building has remained on private property well beyond the date the storage contract expired.
In summary, assuming the governor conveyed all library property of the Eisenhower presidential library commission to the United States pursuant to L. 1961, ch. 393, and assuming the conveyance was accepted by the federal government pursuant to federal statute, the United States presently owns title to the old Rock Island Railroad depot building. The state retains no ownership or possessory interest in any library property so conveyed to the United States. The storage contract for the depot building executed by the state commission and Old Abilene Town Company, Inc. created a bailment for mutual benefit that expired in 1985. The state's right to take possession of the building upon expiration of the contract term was transferred to the federal government along with title to the building.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 J. Lyn Entrikin Goering Assistant Attorney General
CJS:JLM:LEG:bas