**CURTIS 1000, INC., Plaintiff,**

v.

**Franklin J. PIERCE and American Business Forms, Inc., Defendants.**

**No. 94–4086–RDR.**

United States District Court, D. Kansas.

Oct. 3, 1995.

Charles N. Henson and K. Gary Sebelius, Wright, Henson, Somers, Sebelius, Clark & Baker, Topeka, KS, for Curtis 1000, Inc.

Gary L. Ayers, Foulston & Siefkin, Wichita, KS, for Franklin J. Pierce and American Business Forms, Inc.

### MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This case is now before the court upon defendants' motion for partial summary judgment. Defendants' motion attacks two areas: plaintiff's claim for misappropriation of trade secrets and plaintiff's claims for tortious interference with contractual relations. Defendants' motion also asks for an award of attorney's fees expended in defense of the trade secrets claim.

## SUMMARY JUDGMENT STANDARDS

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bac-*

*chus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

## UNCONTROVERTED FACTS

This case arises from the employment of defendant Pierce by plaintiff. Plaintiff sells business forms and printed business materials. Pierce was a sales representative for plaintiff until plaintiff fired him. When plaintiff fired Pierce, plaintiff immediately collected Pierce's file cabinet, customer cards and file books. Pierce did not have a price book.

Plaintiff had a written sales representative agreement with Pierce. The agreement contained restrictive covenants against activity with customer accounts following Pierce's employment with plaintiff. The agreement also stated that: plaintiff's products were specialized items; the identity and needs of plaintiff's customers were not generally known in the industry; and plaintiff had a proprietary interest in this information. The agreement further stated: that plaintiff had invested time and effort in developing Pierce's sales territory and accounts and in training Pierce; and that plaintiff had disclosed and would disclose valuable trade secrets to Pierce. The agreement defined "trade secrets and confidential information" as meaning and including "documents and information regarding the Company's methods of production, sales, pricing, costs, suppliers, the identity of and specific requirements of the Company's customers, and any document marked 'confidential.'" According to the agreement, Pierce is barred from using or disclosing trade secrets and confidential information in any way detrimental to plaintiff.

Customer records and cards and customer information gathered by a sales representative for plaintiff are marked "confidential" by plaintiff, and access is restricted to the sales representative involved with the accounts and sales management. Documents containing customer names, date of first purchase, types of products purchased, full price of products, percent of discount, type of account, amount of purchase, date of last purchase and commission information, also are marked as "confidential company property." A competitor could find this information useful to target certain accounts, if the information were available. Customer/prospect lists by city and territory are marked "confidential" by plaintiff. Plaintiff's "assigned account program" also is labeled "confidential" and "privileged information."

In addition, plaintiff maintains information regarding purchasing agents and annual purchase amounts which are not generally known to the public. Plaintiff's sales representatives are trained to develop this information, as well as facts regarding specific customer needs. Plaintiff's philosophy is to try to develop a relationship between its customers and its sales representatives based on the expertise of the sales representatives. Pierce had such a relationship with some customers before he was fired by plaintiff.

Pierce does not know the current price of plaintiff's products because the prices change frequently. The public library is a resource for names of businesses which are potential customers of plaintiff or other business form sellers.

On September 7, 1993, Pierce signed an independent contractor agreement with American Business Forms, Inc. ("ABF"). Prior to signing the contract with ABF, Pierce had a discussion about plaintiff's sales representative agreement with ABF president, Larry Zavadil. Zavadil was generally familiar with the plaintiff's sales representative agreement. Zavadil agreed to pay Pierce's defense costs if plaintiff sued to enforce the noncompetition clauses of the agreement. His opinion is that the noncompetition clauses are not enforceable. Zavadil did not advise Pierce to contact or not contact plaintiff's customers. ABF does not spend money to train sales personnel.

Since leaving plaintiff, Pierce has contacted and made sales to customers he contacted as a sales representative of plaintiff. The contract between Pierce and ABF gives ABF

a percentage of any profit received by Pierce, but Pierce selects the customer, finds the supplier and prices the product. ABF acts as a clearinghouse for the invoicing of the product and provides other informational and accounting services to Pierce.

In general, plaintiff has retained a large majority of customers after a sales representative has left the company.

In response to the instant motion for summary judgment, plaintiff has identified the following items as trade secrets: knowledge of prices and discount structure; identity of customers; knowledge of customer needs; status of customer accounts; knowledge of prior customer purchases; identity of suppliers; identity of printers; and methods of gathering information from customers. Defendants contend that this information is obvious and generally available.

*Trade Secret Claim*

█ Plaintiff's trade secret claim is brought under the Uniform Trade Secrets Act, K.S.A. 60–3320 *et seq.* This statute defines "trade secret" as follows:

> (4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use, and
>
> (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Obviously, under this definition, for information to be a trade secret it must: 1) have economic value; 2) derive value from not being generally known or readily ascertainable; and 3) be subject to efforts to maintain its secrecy. In *All West Pet Supply v. Hill's Pet Products,* 840 F.Supp. 1433, 1437–38 (D.Kan.1993), Judge Saffels set out a relevant discussion of trade secret law, which this court will repeat omitting numerous citations:

> The existence of a trade secret under the Uniform Trade Secrets Act is a question of

fact for determination by the trier of fact....

> Customer lists and other customer information may constitute a trade secret ... Whether customer information is generally known or readily ascertainable is a question of fact.... Similarly, whether the possessor of such information has taken reasonable steps to protect its secrecy is also a question of fact....
>
> A plaintiff alleging misappropriation of a trade secret need not prove that every element of information in a compilation is unavailable elsewhere ... Trade secrets often contain elements that by themselves may be in the public domain, but together nevertheless qualify as trade secrets ...
>
> [O]nly reasonable efforts are required to protect the secrecy of putative trade secrets, not all conceivable efforts....

█ With this discussion in mind, we turn to defendants' arguments for summary judgment against plaintiff's trade secret claim. First, defendants contend that the information allegedly misappropriated was not a "trade secret" under Kansas law. Defendants do not deny that plaintiff has attempted to protect the secrecy of the information or that the information has economic value. Defendants assert that the information in question is so easily ascertainable that it is not a trade secret. Defendants note the holding in *Garst v. Scott,* 114 Kan. 676, 220 P. 277, 278 (Kan.1923):

> A person who leaves the employment of another has the right to take with him all the skill he has acquired, all the knowledge that he has obtained, and all the information that he has received, so long as nothing is taken that is the property of the employer.... [C]ustomers are not trade secrets. They are not property.... Written lists of customers may be property, but the defendant did not take any such list. Skill and knowledge acquired or information obtained cannot be left behind so long as those things exist within the mind of the employee. All that knowledge, skill and information, except trade secrets, become a part of his equipment for the transaction of any business in which he

may engage, just the same as any part of the skill, knowledge, information, or education that was received by him before entering upon the employment. Those things cannot be taken from him, although he may forego them, forget them, or abandon them.

In *Garst*, the court reversed an injunction which prohibited a defendant from soliciting customers on his former employer's laundry route on behalf of his present employer's laundry business. Contrary to the instant case, no covenant had been entered against such competition, and no effort to protect the "customer list" from disclosure was mentioned in the opinion. Nor does the opinion address other types of customer information aside from the identity of customers.

For these reasons, we do not believe *Garst* controls the result of defendants' summary judgment motion. In addition, we believe the cases from Kansas and other jurisdictions demonstrate that whether customer information qualifies as a trade secret is a fact-intensive inquiry. See *Koch Engineering Co., Inc. v. Faulconer*, 227 Kan. 813, 610 P.2d 1094, 1107 (1980) ("[w]hether a particular customer list is a trade secret depends on the facts and circumstances of each case"). Of course, on a summary judgment motion, the factual record is examined in a light favorable to the nonmovant. Mindful of this, the court cannot conclude that any reasonable factfinder would find the information in question to be readily ascertainable by proper means and, therefore, not a trade secret. Hence, we reject defendants' first argument for summary judgment against the trade secret claim.

■ Defendants' second argument against the trade secret claim is that there is no evidence that ABF obtained any trade secrets from plaintiff. This argument is based on Pierce's status as an independent contractor rather than an employee of ABF. ABF asserts that it had no interest in or control over how Pierce developed a customer base after Pierce was terminated by plaintiff.

Under the Uniform Trade Secrets Act, "misappropriation" includes "use of a trade secret of another without express or implied consent" by someone who "knew or had reason to know that his knowledge of the trade secret was ... derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." K.S.A. 60–3320(2). Plaintiff contends that ABF knowingly benefited from the misappropriation of trade secrets by Pierce and, therefore, ABF should not be granted summary judgment.

In spite of defendant Pierce's status as an independent contractor rather than an employee of defendant ABF, we believe there is sufficient evidence for a reasonable jury to infer that ABF intended, through its agreement with Pierce, to profit from Pierce's use and disclosure of alleged trade secrets. Such a finding, in our opinion, would be sufficient to categorize ABF itself as a user of a trade secret under the Uniform Trade Secrets Act. See 12 Milgrim on Trade Secrets § 7.02[2][c] at 7–93 (1995) (citing common law cases in which a duty against misappropriation of a trade secret is imputed to a corporate entity user because it knew or should have known that a person was disclosing information with respect to which he was subject to a duty of secrecy). Here, it may be reasonably argued that ABF knew or should have known that it was profiting from the use and disclosure of alleged trade secrets by Pierce. The fact that Pierce was an independent contractor cannot shield ABF from the consequences of this knowledge.

Defendants' third and final argument for summary judgment against plaintiff's trade secrets claim is that there is insufficient evidence that the alleged trade secrets were acquired through improper means. We reject this argument. As plaintiff notes, the statute defines "misappropriation" in the disjunctive. Misappropriation occurs when there is acquisition of a trade secret by improper means *or* when there is improper disclosure or use of a trade secret by another without express or implied consent. K.S.A. 60–3320(2). We believe a fact issue exists as to whether misappropriation occurred as defined in the uniform act.

Because of the above holdings, the court also rejects defendants' claim for attorney's fees under K.S.A. § 60–3323. We do not

believe the claim of misappropriation has been made in bad faith.

*Tortious interference with contractual relations*

Plaintiff asserts that defendants Pierce and ABF interfered with prospective contractual relations between plaintiff and plaintiff's customers by defendant Pierce's alleged breach of the restrictive covenants or defendant ABF's inducement of Pierce's breach of the restrictive covenants. Plaintiff also claims that defendant ABF interfered with plaintiff's contract with defendant Pierce by inducing Pierce to violate his post-employment obligations to plaintiff under the contract.

■ The elements of tortious interference with prospective contractual relations are: "(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct." *Turner v. Halliburton Co.,* 240 Kan. 1, 722 P.2d 1106, 1115 (Kan.1986). The elements of tortious interference with an existing contract are: (1) the existence of a contract; (2) defendant's knowledge of the contract; (3) intentional interference with the known contract without legal justification; and (4) resulting damage to plaintiff. *Brown Mackie College v. Graham,* 768 F.Supp. 1457, 1460–61 (D.Kan.1991).

■ Defendants' first argument against plaintiff's tortious interference claims is that defendant ABF did not engage in misconduct or otherwise improperly interfere with plaintiff's prospective or existing contractual relations. Defendants assert: that ABF did not know and was not told who defendant Pierce was contacting for sales after he was terminated by plaintiff; that ABF did not direct or control Pierce's actions; and that ABF did not know who plaintiff's prospective customers were. However, these factual assertions are not directly substantiated in the list of uncontroverted facts defendants have supplied in support of their motion. Furthermore, there is circumstantial evidence which is contrary to defendants' assertions. The uncontroverted facts before the court do not foreclose the possibility that a reasonable jury would find that defendant ABF had the requisite knowledge and committed actions necessary for liability. Therefore, the court shall reject defendants' first argument for summary judgment against plaintiff's tortious interference claims.

■ Defendants' next argument is that plaintiff's remedy against defendant Pierce is limited to what is available under the terms of plaintiff's contract with Pierce. We agree with this argument. The alleged violation of the restrictive covenant by Pierce is the misconduct which forms the basis of plaintiff's claim of tortious interference with prospective business relations. "Where the parties contemplate a remedy in the event of breach, and the provisions of the contract cover the consequences of default, the bargained-for existence of a contractual remedy displaces the imposition of tort duties." *Atchison Casting Corp. v. Dofasco, Inc.,* 889 F.Supp. 1445, 1461 (D.Kan.1995). Consequently, the court shall grant summary judgment against plaintiff's claims against defendant Pierce for tortious interference with prospective business relations.

■ Finally, defendants have argued that there is no evidence that defendant Pierce interfered with plaintiff's prospective business relations or evidence that plaintiff was damaged by defendant Pierce's actions. Because this argument may be relevant to plaintiff's tort claims against ABF, we shall address it. We believe that material issues of fact remain in this area. There is sufficient evidence in the record on summary judgment for a jury to conclude: that plaintiff had not abandoned the customers contacted by Pierce; that Pierce contacted prospective customers of plaintiff; and that Pierce's actions caused damage to plaintiff. Therefore, we do not accept defendants' final argument for summary judgment.

904

In conclusion, the court shall grant summary judgment against plaintiff's claim against defendant Pierce of tortious interference with prospective business relations. Otherwise, defendants' motion for summary judgment and attorney's fees is denied.

**IT IS SO ORDERED.**